[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 91.]

IN RE ADOPTION OF ASENTE.

[Cite as *In re Adoption of Asente*, 2000-Ohio-32.]

*Children—Adoption—Interstate custody dispute—Jurisdiction to make parenting decision relative to child—Court of appeals' judgment affirmed.*

(No. 99-2158—Submitted August 22, 2000—Decided August 23, 2000.)

APPEAL from the Court of Appeals for Trumbull County, Nos. 99-T-0055, 99-T-0056, 99-T-0057 and 99-T-0058.

———————————

*Lane, Alton & Horst, Charles K. Milless* and *Corinne N. Ryan; Susan Garner Eisenman*, for appellants Richard and Cheryl Asente.

*Richard A. Cullison* and *Michael A. Scala*, for appellee Regina C. Moore.

*Stephanie A. Dietz*, for appellee Jerry Dorning.

*Suellyn Scarnecchia*, urging reversal for *amicus curiae* Hear My Voice.

*Katherine Hunt Federle* and *Anita A. DiPasquale*, urging reversal for *amicus curiae* The Justice for Children Project.

*Kellis, Totaro & Soffer* and *Samuel C. Totaro, Jr.*; and *Mary E. Smith*, urging reversal for *amicus curiae* American Academy of Adoption Attorneys.

———————————

{¶ 1} The judgment of the court of appeals is affirmed for the reasons stated by the court of appeals in its opinion rendered on November 1, 1999, which we adopt and attach as an appendix to this entry.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., CONCUR.

*APPENDIX*

**WILLIAM M. O'NEILL, JUDGE.**

**{¶ 2}** The following appeal concerns an interstate custody dispute. It represents a two-year, multi-state legal struggle concerning a little boy and the two families who love him. By definition, contested adoption proceedings are traumatic events. There are rarely winners in the traditional sense of the word, and there is enough emotional turmoil to fill a family therapist's calendar for months on end.

**{¶ 3}** The current litigation at this appellate level is not about good parents or bad parents. Further, this court is also not determining custody, an issue to be decided later by a court with competent jurisdiction. Rather, this court has a very solemn role to play, and that is to determine which court, either a Kentucky or Ohio court, has jurisdiction over this matter. As this case demonstrates, the best interest of a child is never served when adults turn to seemingly endless litigation to resolve their disputes. In this case, the parties have staked out a position and have waited for the courts to schedule hearings where it is hoped that the Wisdom of Solomon will come down on the winning side. In the interim, the life of a child and two families are left in turmoil and uncertainty to no one's benefit. Litigation of these matters is already difficult when one court in one state is involved in the controversy. It becomes unwieldy when multiple states become embroiled in the dispute and cannot agree on the basic issue of jurisdiction.

**{¶ 4}** There are many statutes, and proposed statutes, throughout this murky area of the law designed to avoid the very situation we find ourselves in today. One common thread runs through every statute, every court opinion, and every learned treatise on this matter. That common thread is built on the bedrock proposition that once a court of competent jurisdiction has begun the task of deciding the long-term fate of a child, all other courts are to refrain from exercising jurisdiction over that matter.

**{¶ 5}** As a matter of law, one court, and one court only, may exercise jurisdiction over this child and this dispute. As is readily apparent, that basic concept of one court and one child has been violated in this matter. The present controversy began in Kentucky when one set of parents decided to set the process in motion to voluntarily place their child up for adoption with another party. When the natural parents changed their minds and sought to terminate the voluntary adoption, additional proceedings were initiated in an Ohio court to effectuate the voluntary adoption proceeding. What began as a dispute in one court in one state ended in two courts from two separate states issuing orders regarding this matter.[1] Both courts claim to have jurisdiction over this dispute and both courts have issued diametrically opposing orders with respect to the child. For the reasons that follow, we determine that the Ohio court does not have jurisdiction over this matter.

**{¶ 6}** The following facts are pertinent to this appeal. On February 28, 1997, the child who is the subject of this dispute, Justin, was born in Boone County, Kentucky. The child's unmarried natural parents are appellants, Regina Moore and Jerry Dorning.

**{¶ 7}** The Asentes, who reside in Trumbull County, Ohio, previously participated in an open adoption with Moore for their first child, Joseph.[2] The Asentes agreed to participate in a second open adoption with Moore.

**{¶ 8}** After Justin's birth in February 1997, Moore apparently changed her mind and indicated that she would parent the child herself. Approximately eleven months later, in December 1997, Moore again contacted the Asentes and indicated her willingness to proceed with the adoption. As part of the arrangement, the Asentes hired a Kentucky attorney, Thomas C. Donnelly, to represent Moore and

---

1. Trumbull County Court of Common Pleas, Probate Division, in Ohio; and the Sixteenth Judicial District, Kenton Circuit Court, Fourth Division, in Kentucky.

2. To avoid the possibility of confusion, we note that the adoption of Joseph by the Asentes is not the subject of this dispute.

Dorning with respect to the termination of their parental rights, after which the Asentes would then be able to proceed with the adoption of the child in Ohio.

{¶ 9} Donnelly testified at a hearing before the Kentucky court that the Asentes chose to terminate appellants' parental rights through a voluntary termination proceeding in Kentucky. He testified that this approach was chosen because it was the fastest way to assure that appellants' parental rights were terminated. It is apparent that appellants expressed reservations about proceeding with the adoption at an early stage. However, Donnelly, as well as others associated with the adoption, continued to assure appellants that they had until the final hearing on their petition for voluntary termination of their parental rights to change their minds.

{¶ 10} On December 16, 1997, Moore and Dorning signed a form titled "application for permission to receive or place a child." This form designated the Asentes as the persons whom appellants wished to adopt Justin. On January 12, 1998, appellants signed an Interstate Compact Placement Request (ICPC-100A), requesting state approval for the interstate placement of Justin with the Asentes.

{¶ 11} On January 27, 1998, Moore and Dorning signed separate documents entitled "voluntary and informed consent to adoption." These documents, prepared by Donnelly, purported to convey appellants' consent to the adoption of Justin by the Asentes. This form also contained a provision stating that the consent was final and irrevocable twenty days after execution of the document. Despite the language in this document, purporting to extinguish appellants' parental rights without the need of judicial intervention, Donnelly continued to inform appellants that they would still be able to change their minds anytime prior to the voluntary termination of parental rights proceeding that was to be filed in Kentucky. Donnelly further informed appellants that these consent forms were necessary to permit the immediate and temporary placement of the child with the Asentes in Ohio.

**{¶ 12}** On February 17, 1998, the Asentes signed a legal risk statement, prepared by Donnelly, indicating their understanding that Moore and Dorning could void their consent concerning the proposed adoption *anytime prior to the final hearing on the termination of appellants' parental rights*. That same day, both the Kentucky and Ohio Offices of Interstate Compact on the Placement of Children approved the placement of the child with the Asentes. Also on February 17, 1998, Justin was physically transported by the Asentes from Kentucky to their home in Trumbull County, Ohio, where the child has continuously resided to this day.

**{¶ 13}** Virginia Smith, the administrator of interstate adoptions in Kentucky, would later testify at a proceeding in the Kentucky court that she did not notice that the Asentes executed a legal risk statement. She stated that this statement would have raised a red flag to her that this adoption was proceeding as a voluntary termination of appellants' parental rights that needed court approval, as opposed to an out-of-state adoption that would not require judicial intervention under Kentucky law.

**{¶ 14}** Soon after Justin was placed with the Asentes, Moore and Dorning contacted Donnelly expressing their reluctance to go through with the voluntary termination of their parental rights. Donnelly again informed appellants that they had until the termination hearing to change their minds. He then gave Moore the name of someone to talk with regarding her indecision over terminating her parental rights.

**{¶ 15}** On March 9, 1998, appellants signed a petition for voluntary termination, prepared by Donnelly, and filed with the Kenton Circuit Court, case No. 98-AD-00020, on March 16, 1998. The matter was set for a final hearing on March 26, 1998.

**{¶ 16}** On the date of the final hearing, March 26, 1998, appellants met Donnelly at the Kenton County Courthouse and informed him that they did not want to proceed with the adoption and wanted Justin returned immediately. Justin

had been in Ohio for a total of thirty-seven days at that time. The Kentucky court was notified that appellants did not want to proceed with the voluntary termination of their parental rights and the hearing was cancelled pending further action. Thereafter, Moore contacted the Asentes by telephone to inform them of her decision to halt the adoption and have Justin returned to her immediately. That same day, the Asentes acknowledged appellants' right to have Justin returned to them but requested that they reconsider their decision. Appellants made subsequent attempts to contact the Asentes in order to regain custody of Justin with no response. When appellants contacted Donnelly for assistance, he informed appellants that he was no longer in a position to offer them counsel in this matter. Thereafter, sometime during May 1998, appellants retained alternative counsel and requested that the Kentucky court order the Asentes to immediately return Justin to their custody.

{¶ 17} On June 5, 1998, the Asentes filed a petition for adoption of Justin in Ohio with the Trumbull County Court of Common Pleas, Probate Division, designated as case No. 98 ADP 040. The petition alleged that appellants' consent to the adoption was unnecessary based on the voluntary and informed consent to adoption forms signed by both Moore and Dorning on January 27, 1998. The Asentes further noted that both of these forms indicated that they were final and irrevocable twenty days later, a time period that had long passed since the child was first placed in their custody.

{¶ 18} On July 6, 1998, the Kentucky court in case No. 98-AD-00020 issued an order asserting that it had jurisdiction over Justin as well as any issues related to the custody and best interest of the child. On July 8, 1998, the Trumbull County Probate Court dismissed the Asentes' adoption petition on the basis that the Kentucky court currently had jurisdiction over whether appellants' parental rights were properly terminated under Kentucky law. From this judgment of the Ohio court, the Asentes filed an appeal with this court designated as case No. 98-T-0145.

6

{¶ 19} On August 21, 1998, with the initial appeal still pending in this court, the Asentes filed a motion in the Trumbull County Probate Court titled motion for hearing and reconsideration. In their motion, the Asentes alleged that the Kentucky court dismissed the action before it in case No. 98-AD-00020 for lack of jurisdiction. Pursuant to Civ.R. 60(B)(4), the Asentes requested relief from the Ohio court's judgment of July 8, 1998.[3] After filing additional motions in the Ohio trial court with respect to their motion for relief from judgment, the Asentes subsequently requested a voluntary dismissal of the appeal filed in this court in case No. 98-T-0145. This court granted the Asentes' request for dismissal of the original appeal by judgment entry filed October 19, 1998.

{¶ 20} In November 1998, the original probate judge who declined to exercise jurisdiction over the adoption of Justin in Ohio disqualified himself from this case. A judge from the Stark County Court of Common Pleas was assigned to preside in the Trumbull County Probate Court over this matter. On December 14, 1998, this new judge granted the Asentes' request for relief from the order of July 8, 1998, which denied jurisdiction in Ohio.

{¶ 21} On February 11, 1999 and February 25, 1999, respectively, the Asentes filed a supplemental petition for adoption in Trumbull County in case No. 98 ADP 0040 as well as a new petition for adoption designated as case No. 99 ADP 023. In both the supplemental and new petitions for adoption, the Asentes asserted that appellants' consent to the adoption became unnecessary pursuant to R.C. 3107.07(A) because appellants had failed without justifiable cause to provide for the maintenance and support of the child for the one-year period immediately

---

3. Due to the important nature of the case before us and the fact that a determination of the procedures utilized by the Asentes to have their claims heard in an Ohio court would not change the ultimate outcome of our decision, we offer no opinion as to the propriety of the Asentes' filing a motion for relief from judgment in the trial court in conjunction with the filing of their notice of appeal in this court. See *Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc.* (1994), 70 Ohio St.3d 141, 147, 637 N.E.2d 890, 895; *Daloia v. Franciscan Health Sys. of Cent. Ohio, Inc.* (1997), 79 Ohio St.3d 98, 101-102, 679 N.E.2d 1084, 1088, fn. 5.

preceding the filing of the adoption petition.  Subsequently, the new probate judge assigned to hear this matter indicated that it would hold a hearing regarding its ability to assume jurisdiction over the Asentes' adoption petitions.

{¶ 22} While the Asentes were attempting to establish a foothold from which to have an Ohio court hear their claims for custody of Justin, proceedings were also being held in Kentucky regarding this matter.  It is apparent that the Asentes made a special appearance in Kentucky case No. 98-AD-00020, asking the court to reconsider its order of July 6, 1998, which accepted jurisdiction over all issues related to the custody of Justin.  Following a hearing on August 17, 1998, the Kentucky court on September 8, 1998, ruled that the Asentes were not a proper party to the confidential proceeding regarding appellants' petition for voluntary termination of their parental rights filed March 16, 1998.  The Kentucky court further noted that this petition for voluntary termination was dismissed.

{¶ 23} On August 17, 1998, prior to the Kentucky court formally dismissing appellants' petition for voluntary termination, appellants filed a second action in the Kenton Circuit Court designated as case No. 98-CI-01610.  This action, filed exactly six months from the date Justin left Kentucky for Ohio, sought an order from the Kentucky court requiring the Asentes to immediately return Justin to his natural parents.  On September 4, 1998, the Asentes filed a motion to dismiss this action, claiming that Ohio was the proper forum for this dispute to be resolved and again claimed that they had proper custody of the child based on the voluntary and informed consent to adoption that appellants signed on January 27, 1998.  In an order filed October 22, 1998, the Kentucky court denied the Asentes' motion to dismiss.  The Kenton Circuit Court further held that Kentucky remained Justin's home state, that there existed substantial evidence regarding the child's welfare in Kentucky, and concluded that Kentucky retained jurisdiction over this matter.

{¶ 24} On February 4, 1999, a hearing was held in Kentucky case No. 98-CI-01610 with all of the parties, including the Asentes, regarding appellants'

8

petition for the immediate return of Justin to his natural parents. On February 11, 1999, the Kentucky court determined that the voluntary and informed consent to adoption forms signed by Moore and Dorning on January 27, 1998, were void and concluded that the child should have been returned to appellants after they dismissed their petition to voluntarily terminate their parental rights.

{¶ 25} In its entry, the Kentucky court recounted the evidence presented at the hearing; specifically, the court noted that the parties agreed that the adoption would proceed with a voluntary termination of appellants' parental rights in Kentucky, followed by the filing of an adoption petition by the Asentes in Ohio. The court further noted that Donnelly may have made a mistake in utilizing terms in the consent form that parroted language utilized in an alternative means to permit an adoption, one that did not require judicial intervention. However, the Kentucky court concluded that this mistake was insufficient to change the parties' agreement with respect to how this adoption was to proceed. Thus, the Kentucky court granted appellants' petition for the immediate return of Justin, subject to a visitation and transfer plan to be approved by the court at a later date. The Asentes have filed an appeal from this order that is currently pending in the Kentucky appellate court system.

{¶ 26} In Ohio, the Trumbull County Probate Court conducted a hearing on April 2, 1999, regarding its ability to assume jurisdiction over the adoption petitions filed by the Asentes. Evidence was presented at this hearing concerning the proceedings held in Kentucky as well as testimony regarding the significant connections that both the Asentes and Justin now have with the state of Ohio.

{¶ 27} By judgment entry filed April 8, 1999, the Ohio trial court ruled that this was not a case where a conflict existed "between the concurrent subject matter jurisdiction of two courts" because only Ohio was exercising adoption jurisdiction, a valid exercise of the court's subject-matter jurisdiction. The court scheduled a hearing for the Asentes' adoption petitions and further held that the order issued by

the Kentucky court in case No. 98-CI-01610 on February 11, 1999, was not entitled to full faith and credit by the courts of the state of Ohio.

{¶ 28} In making this determination, the trial court attempted to reconcile the following three statutes that have varying degrees of applicability to adoption proceedings: (1) the Interstate Compact on the Placement of Children ("ICPC"), codified in Ohio at R.C. 5103.20 *et seq.* and in Kentucky at KRS 615.030, (2) the Uniform Child Custody Jurisdiction Act ("UCCJA"), codified in Ohio at R.C. 3109.21 through 3109.37 and enacted in substantially the same form in Kentucky at KRS 403.420 through 403.630, and (3) the Parental Kidnapping Protection Act ("PKPA"), Section 1738A, Title 28, U.S.Code. From this judgment, appellants filed a timely notice of appeal and now present the following five assignments of error:

"[1.] The trial court erred, to the detriment of appellants, in ruling that Ohio had jurisdiction to hear this case.

"[2.] The trial court erred, to the detriment of appellants, in failing to give full faith and credit to the orders of the Circuit Court of Kenton County, Kentucky.

"[3.] The trial court erred, to the detriment of appellants, by holding the hearing in open court.

"[4.] The trial court erred, to the detriment of appellants, by failing to dismiss this petition for lack of a necessary party.

"[5.] The trial court erred, to the detriment of appellants, by entering orders on custody and visitation without having the jurisdiction to do so."

{¶ 29} Before addressing appellants' assigned errors, we note that this appeal originated as four separately filed cases, resulting in appellate case Nos. 99-T-0055 through 99-T-0058. As all four cases present identical issues, this court consolidated the individually filed appeals for all purposes. On July 15, 1999, this court expedited the briefing and hearing schedules for this case and noted that the principal issue to be resolved was the determination of which state's court, Ohio or

10

Kentucky, has proper jurisdiction over this matter. As this is the core issue to be resolved, we will address appellants' first, second, and fifth assignments of error first and in a consolidated manner. Both parties, as well as the American Academy of Adoption Attorneys, who filed an *amicus* brief on behalf of the Asentes, attempt to entice this court into deciding this matter by weighing the respective parenting abilities of the parties. This we decline to do, as the decisive issue before this court is the right of an Ohio court to exercise jurisdiction over this matter.

{¶ 30} A cursory review of the facts of this case reveals that at alternative times during this proceeding, both the Ohio and Kentucky courts have issued orders asserting their exclusive jurisdiction over various aspects of this matter. In the end, however, each state proclaimed that it alone had home state jurisdiction over the minor child and was in the best position to determine the issues involved in this adoption proceeding.

{¶ 31} As the Ohio trial court indicated, an analysis as to which court properly has jurisdiction over this matter requires a review of three separate statutes: the ICPC, the UCCJA, and the PKPA. However, it must be noted at the onset of our analysis that the law in this area has been hampered by the inconsistent and apparently result-driven outcomes reached by the various courts that have addressed similar issues regarding jurisdictional conflicts.

{¶ 32} In reaching its decision to exercise jurisdiction over this matter, the trial court first considered the ICPC, a law that has been enacted by all fifty states and the District of Columbia to facilitate the cooperation between states for the placement of children. One of the ICPC's provisions, at Article V, provides as follows:

"(A) The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-

supporting or is discharged with the concurrence of the appropriate authority in the receiving state. Such jurisdiction shall also include the power to effect or cause the return of the child * * *." See R.C. 5103.20.

{¶ 33} In interpreting this article with respect to interstate jurisdictional disputes, an argument could be made that appellants were the "sending agent" as that term is defined in the ICPC[4] and that Kentucky retained jurisdiction to determine all matters regarding the care and custody of Justin until such time as the adoption in Ohio was finalized. However, various court and scholarly opinions assert that the term "jurisdiction," as utilized in the ICPC, was never intended to determine which court may appropriately exercise jurisdiction over all or some aspects of an adoption proceeding. See comment to Section 2-107, 9 Uniform Laws Annotated, Part IA, Uniform Adoption Act of 1994; *Adoption of Zachariah K.* (1992), 6 Cal.App.4th 1025, 1038, 8 Cal.Rptr.2d 423, 431.

{¶ 34} Rather, these commentators contend that the ICPC helps to determine the legality of an interstate placement only after a court has properly asserted jurisdiction (in an adjudicatory authority sense) under the UCCJA and PKPA, and that the term "jurisdiction" as used in the ICPC merely refers to which party in an adoption proceeding has "responsibility for a child's well-being." *Id.*; see, also, Waller, Note: When the Rules Don't Fit the Game: Application of the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act to Interstate Adoption Proceedings (1996), 33 Harv.J. on Legis. 271, 288, noting the many courts throughout this country that have attached jurisdictional importance in the adjudicatory-authority sense to ICPC provisions.

{¶ 35} The Ohio trial court indicated in its entry of April 8, 1999, that despite the problematic language utilized in Article V, it also was rejecting the idea

---

4. The term "sending agency" is defined at Article II of R.C. 5103.20 as a "party state, officer or employee thereof; a subdivision of a party state, or officer or employee thereof; a court of a party state; a *person*, corporation, association, charitable agency, or other entity which sends, brings, or causes to be sent or brought any child to another party state." (Emphasis added.)

that the ICPC established a court's jurisdiction to decide adoption matters and focused its analysis instead on the UCCJA and PKPA. Upon review, we cannot fault the trial court's decision in this regard. Our search of the relevant case law has found no Ohio court that has either accepted or rejected jurisdiction of an adoption matter based on the ICPC.

{¶ 36} However, we have found courts in Ohio that have applied the UCCJA to jurisdictional conflicts in adoption proceedings. See *Roth v. Hatfield* (Dec. 28, 1983), Gallia App. Nos. 82CA19, 82CA20 and 82CA21, unreported, 1983 WL 2300; *In re Adoption of Woodruff* (Dec. 31, 1984), Ross App. No. 1125, unreported, 1984 WL 5703; but, see, *In re Adoption of White* (Feb. 16, 1982), Pickaway App. No. 80-CA-25, unreported, 1982 WL 3375, a decision out of the same appellate district as *Roth* and *Woodruff*, holding that the UCCJA is only relevant to custody disputes and has no application in an adoption proceeding.

{¶ 37} The trial court's application of the UCCJA and PKPA to adoption matters appears to have the support of the majority of jurisdictions within the United States. See, *e.g.*, *Souza v. Superior Court of Santa Cruz* (1987), 193 Cal.App.3d 1304, 238 Cal.Rptr. 892; *Gainey v. Olivo* (1988), 258 Ga. 640, 373 S.E.2d 4; *Foster v. Stein* (1990), 183 Mich.App. 424, 454 N.W.2d 244. The rationale behind these courts that apply the UCCJA to adoption cases, an analysis accepted by the trial court, stems from the ultimate effect of adoption, namely, to completely terminate the custody rights of the child's natural parents. This approach, as with the application of the ICPC to determine jurisdictional conflicts, has its critics who cite problems with applying the UCCJA to adoption proceedings and note that the term "adoption" is found nowhere within the UCCJA's definition of "custody proceedings." *Williams v. Knott* (Tex.App.1985), 690 S.W.2d 605; *In re Johnson* (Ind.App.1981), 415 N.E.2d 108, 110-111; see, also, Hollinger, The Uniform Adoption Act: Reporter's Ruminations (1996), 30 Fam.L.Q. 345, 369;

Kay, Adoption in the Conflict of Laws: The UAA, Not the UCCJA, Is the Answer (1996), 84 Cal.L.Rev. 703.

{¶ 38} As with the trial court's decision not to apply Article V of the ICPC to determine the jurisdictional dispute in this matter, we again do not fault the trial court's decision to apply the UCCJA and the PKPA. Although the trial court recognized that the thrust of these Acts was to settle disputes between family members, the Ohio court also recognized that "adoption proceedings are truly custody proceedings requiring application of the PKPA and the UCCJA because the end result of an adoption is the complete termination of the rights of the birth parents."

{¶ 39} While this court agrees with the trial court's decision to apply the UCCJA and PKPA to this dispute, we begin to part company with the Ohio court's analysis in its failure to give full faith and credit to the Kentucky court's actions with respect to this matter. In apparent contradiction of its decision to accept jurisdiction over the minor child pursuant to the UCCJA and the PKPA, the trial court indicated that appellants' petition for the voluntary termination of their parental rights, filed in March 1998, in a Kentucky court, "was not for the purposes of determining the custody of Justin." We fail to see how a termination of appellants' parental rights, either through a voluntary petition or an adoption proceeding, did not, for all purposes, determine custody of Justin.

{¶ 40} From a review of the entire record of this proceeding, it is clear that the parties intended this adoption to follow a two-step process: First, the termination of appellants' parental rights was to be accomplished as quickly as possible through a voluntary termination proceeding to be filed in Kentucky; and, second, the subsequent adoption of Justin was to take place by the Asentes in Ohio. When the first step in the above process did not go as planned, the Asentes, rather than returning the child to the natural parents, attempted to obtain jurisdiction of this matter in an Ohio court under provisions of the UCCJA and PKPA.

{¶ 41} For purposes of determining jurisdiction under the UCCJA and PKPA, dates such as when a child moved from one state to another as well as when a custody proceeding commenced in a particular state can be vitally important. In this case, the parties do not dispute that Justin left the state of Kentucky for the last time on February 17, 1998. There is also no dispute that the Asentes filed their initial adoption petition in Ohio on June 5, 1998.

{¶ 42} There is some question whether the petition for voluntary termination, filed March 16, 1998, or motion for immediate entitlement on August 17, 1998, constituted the filing of the initial custody action in Kentucky.[5] The Asentes present a number of arguments as to why this court should not consider the date appellants filed their petition for voluntary termination as the date for determining the commencement date of the first custody proceeding to be filed in Kentucky. Instead, the Asentes assert that the only action filed in Kentucky concerning the custody of Justin, and that included them in the proceedings, occurred on August 17, 1998. It was then that appellants filed an action seeking an order from the Kenton Circuit Court for the immediate return of Justin. Even if this court accepts this later date, August 17, 1998, as the commencement of the first true custody proceeding in Kentucky, this date was still sufficient to establish jurisdiction of this matter in Kentucky and not Ohio pursuant to the UCCJA and PKPA.

---

5. The Asentes assert that they were not parties to the voluntary termination proceeding filed in Kentucky by appellants in March 1998. Thus, the Asentes argue that the Kentucky court did not have personal jurisdiction over them from which to require an Ohio court to give full faith and credit to any order stemming from Kentucky case No. 98-AD-0020. We question why the Asentes would expect, under the circumstances of this case, to be present at a hearing to determine if Justin's natural parents wanted to "voluntarily" terminate their parental rights. However, it is not necessary to delve into these sets of arguments based on the manner in which we have addressed the parties' argumentation.

**{¶ 43}** Pursuant to R.C. 3109.22(A), the UCCJA provides that no court in Ohio may exercise jurisdiction to make a parenting determination unless one of the following applies:

"(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a parent who claims a right to be the residential parent and legal custodian of a child or by any other person claiming his custody or is absent from this state for other reasons, and a parent or person acting as parent continues to live in this state;

"(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]"

**{¶ 44}** Appropriately, the primary "purpose of the UCCJA is to avoid jurisdictional competition and conflict with other jurisdictions and to facilitate the speedy and efficacious resolution of custody matters so that the child or children in question will not be caught in a judicial 'tug of war' between different jurisdictions." *In re Shelton* (Sept. 30, 1997), Trumbull App. No. 97-T-0075, unreported, at 8, 1997 WL 664553, citing *In re Palmer* (1984), 12 Ohio St.3d 194, 196, 12 OBR 259, 261, 465 N.E.2d 1312, 1314.

**{¶ 45}** When a court of this state is asked to make a custody decision with respect to a child who is the subject of proceedings within the jurisdiction of another state, the UCCJA anticipates that a meaningful dialogue will occur between the judges in deciding which court is the more appropriate forum from which to decide the child custody issues. R.C. 3109.24. The initial Ohio trial court judge deferred to the Kentucky court's decision. However, that judge later disqualified himself

from the case and a new judge was appointed to this matter. Unfortunately, the new Ohio judge and the Kentucky judge could not reach an agreement. When both states claimed jurisdiction, under the first alternative of the UCCJA, the courts needed to determine which state was Justin's home state at the time the respective custody proceedings were filed by the parties.

{¶ 46} As previously noted, a child's home state is the state the child resided in for a period of six consecutive months immediately preceding the commencement of a custody proceeding *or* the state where a child lived within six months before the commencement of a custody proceeding and the child is absent from the state because a person claims to have custody of the child in another state, and a contestant continues to reside in this state. See R.C. 3109.22(A) and 3109.21(E). Ohio can only qualify as Justin's home state based on the first definition of the term while Kentucky may be considered Justin's home state under the second definition as set forth above.

{¶ 47} In the present case, Justin, nearly one year old at the time the Asentes received physical possession of the child, had resided with his natural parents for nearly his whole short life. He resided with his prospective adoptive parents for less than four months by the time the original adoption petition was filed in Ohio.[6] Consequently, pursuant to R.C. 3109.21(E) and the definition of the term "home state," it was impossible for Ohio to be Justin's home state, contrary to the finding by the Ohio trial court. On the other hand, appellants filed an action in Kentucky within the six-month period and claimed that they were entitled to the return of the child to whom the Asentes were improperly claiming custody under the laws of Ohio. By filing their custody proceeding within the six-month time period after

---

6. We recognize that the Asentes filed a supplemental and new petition for adoption of Justin in February 1999. However, the "commencement" of their adoption petition was June 5, 1998, and we refuse to seriously undermine the purpose of the UCCJA by considering for "home state" purposes the time period that has passed while the courts determine the proper forum to resolve this custody dispute.

Justin left Kentucky for the last time,[7] appellants can claim that Kentucky has home state jurisdiction over this matter.

{¶ 48} Turning to the second alternative, R.C. 3109.22(A)(2), there can be little disagreement that both states can properly claim that Justin has significant connections to the states of Ohio and Kentucky. However, in an effort to eliminate the possibility of two states' claiming to have jurisdiction over the same child, the PKPA allows for "significant connection" jurisdiction only if no state qualifies for "home state" jurisdiction. Section 1738A(c)(2)(B), Title 28, U.S.Code; *Justis v. Justis* (1998), 81 Ohio St.3d 312, 317, 691 N.E.2d 264, 269; *In re Adoption of Child by T.W.C.* (1994), 270 N.J.Super. 225, 233, 636 A.2d 1083, 1087.

{¶ 49} In order for one state to modify a custody decree of another state under the PKPA, the following two factors must be met: "(1) the state seeking to modify the decree must have jurisdiction to make a child custody determination, and (2) the original state must no longer have jurisdiction, or must have declined to exercise such jurisdiction." *Justis*, 81 Ohio St.3d at 317, 691 N.E.2d at 269.

{¶ 50} In the absence of an Ohio court meeting the above two factors, the child custody determinations of another state made in conformity with the UCCJA are entitled to full faith and credit in this state. *Id*. at 315, 691 N.E.2d at 267. In this case, the Kentucky court has ruled that the consent forms that appellants signed on January 27, 1998, were not valid, and this determination is entitled to full faith and credit by this court and the state of Ohio. Thus, under our application of the UCCJA and PKPA to this case, we determine that a Kentucky court is the proper forum in which to assert jurisdiction over this matter.

---

7. As previously noted, appellants filed their initial custody action in Kentucky, at the very latest, on August 17, 1998. This is just within the six-month time period, for purposes of calculating relevant time period for UCCJA and PKPA purposes, from the date Justin began residing in Ohio for the first time on February 17, 1998.

{¶ 51} We recognize that the Asentes will take issue with our decision and will dispute, among other things, the Kentucky court's claim of home state jurisdiction. In particular, the Asentes claim that appellants' motion for immediate entitlement, time-stamped August 17, 1998, was insufficient, under Kentucky law, to commence an action concerning Kentucky's home state jurisdiction when Justin left Kentucky for the last time on February 17, 1998. However, this is a controversy for the Kentucky court system to resolve, not this court. The Kentucky court's decision to exercise home state jurisdiction, appearing regular on its face, is not subject to collateral attack in Ohio. See *Souza,* 193 Cal.App.3d at 1311, 238 Cal.Rptr. at 897. Should the Kentucky court agree with the Asentes' appeal, they will be able to file a subsequent adoption petition for Justin in Ohio. Until that date, however, an Ohio court has no jurisdiction.

{¶ 52} As previously noted, several commentators have criticized the application of the UCCJA and PKPA to adoption disputes and this criticism has some basis when viewed against the present factual scenario. These commentators have proposed a new Act, the Uniform Adoption Act, designed to resolve some of the problems associated with this case as well as other problems associated with adoptions. See 9 Uniform Laws Annotated, Part IA, Uniform Adoption Act of 1994; Hollinger, The Uniform Adoption Act: Reporter's Ruminations (1996), 30 Fam.L.Q. 345, 369; Kay, Adoption in the Conflict of Laws: The UAA, Not the UCCJA, Is the Answer (1996), 84 Cal.L.Rev. 703.

{¶ 53} Under the current system, when an adoption goes through as planned a beneficial situation occurs amongst the natural parents, the adoptive parents, the child, and the state. However, when things go wrong in an adoption proceeding, this case demonstrates the time, expense, and heartache that result. This court is certainly in favor of any changes to the current statutory scheme that will provide for the swift and certain resolution of disputes that occur in this area.

**{¶ 54}** Although these commentators have counseled against applying the UCCJA and PKPA to this dispute, the analysis they would apply to this proceeding, based on the current state of the law, would not have changed the outcome of our decision. In an interstate adoption that is contested, these commentators suggest that it would have been appropriate for the Ohio court either to stay or dismiss the adoption proceeding before it in order for the birth parent's state to determine the validity of the consent or the attempted revocation of consent. In the alternative, these commentators suggest that the Ohio court could have invoked choice of law rules that would have applied the law of the birth parent's state to resolve the disputed issues. Hollinger at 370-371, fn. 78; Kay at 730-731, fn. 111.

**{¶ 55}** The Ohio trial court did not adopt either of these suggestions and chose to proceed with jurisdiction over the Asentes' adoption petitions without any inquiry into the validity of the consents executed by appellants. It is too late for the trial court to rectify this error, as the Kentucky court has already rendered a decision regarding the validity of appellants' consent in a proceeding in which the Asentes fully participated and, following an adverse decision, filed an appeal within the Kentucky court system.

**{¶ 56}** Even under this alternative view, the Kentucky court's judgment is entitled to full faith and credit in Ohio and is valid until such time as the Kentucky court determines that it no longer has jurisdiction or determines that the appellants' consent to this adoption is no longer necessary. See *Litsinger Sign Co. v. Am. Sign Co.* (1967), 11 Ohio St.2d 1, 40 O.O.2d 30, 227 N.E.2d 609, paragraph one of the syllabus (recognizing that a foreign decree may not be collaterally attacked or disregarded unless it was rendered by a state without personal or subject-matter jurisdiction under the foreign state's internal law).

**{¶ 57}** Appellants' first, second, and fifth assignments of error have merit. Our resolution of these assignments of error renders any analysis with respect to

appellants' remaining assignments of error moot pursuant to App.R. 12(A)(1)(c) and, therefore, need not be addressed.

{¶ 58} The judgment of the trial court is reversed, and judgment is entered in favor of appellants.  Costs are assessed to appellees.

*Judgment reversed.*

NADER, J., concurs.

CHRISTLEY, P.J., concurs in judgment only.

—————————————