[Cite as *In re Guardianship of E.M.*, 2022-Ohio-862.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY


In re Guardianship of E.M.

Court of Appeals No.  S-21-011

Trial Court No.  20132015


**<u>DECISION AND JUDGMENT</u>**

Decided:  March 18, 2022

* * * * *

John A. Coble, Joseph F. Albrechta, and Jordan A. Treece,
for appellant.

Andrew R. Mayle, Ronald J. Mayle, and  Benjamin Padanilam,
for appellees.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, C.M., appeals the June 23, 2021 judgment of the Sandusky County Probate Court which denied her objections to the magistrate's decision denying her application to terminate the guardianship of her daughter, E.M.  Because we find that the court erred in limiting testimony regarding the formation and purpose of the guardianship, we reverse.

## I. Facts and Procedural History

{¶ 2} E.M., the ward, was born premature in 2008.  At age two she was diagnosed with cerebral palsy.  E.M. has physical limitations, a speech delay, and some behavioral concerns and requires various therapies and medical interventions.  In August 2012, appellant and E.M.'s father divorced and custody was awarded to appellant.

{¶ 3} In July 2013, appellees, C.C. and D.C., paternal grandparents of E.M., filed an application for guardianship of the person of their granddaughter.  The stated reason for the indefinite guardianship was that "neither parent is able to provide proper medical and educational care and assistance for [E.M.]."  The guardianship powers requested were for "medical, educational and custody matters as to [E.M.]."  Appellant and E.M.'s father signed a waiver of notice and consent to appellees being appointed guardians.  The guardianship was finalized on August 19, 2013.

{¶ 4} On July 23, 2014, appellant filed an application to terminate guardianship; the stated reason was: "It is in the best interest [o]f Ward that the Mother be restored to full custody, care and [c]ontrol.  The Guardianship is no longer necessary and Mother can provide for all of the Ward's needs."  A guardian ad litem was appointed for E.M. On August 5, 2015, appellant filed a motion to reduce guardian powers to a limited guardianship under R.C. 2111.02(B).  Appellant specifically requested that she would like continued assistance with E.M.'s medical and educational needs but desired to regain custody.  A hearing on the application was held on November 23, 2015.  Thereafter, on

2.

December 22, 2015, the magistrate issued his decision denying the motions to either terminate or reduce the guardianship powers. The court concluded:

> The evidence presented at the hearing is clear that the ward's health has not significantly changed making guardianship no longer necessary. Also, on July 2, 2013 [C.M.] executed consent to the appointment of [C. and D.C.] as guardians of [E.M.]. That consent was filed with the Court and was not withdrawn prior to the appointment of the [C.s] on August 19, 2013.

> The Letters of Guardianship issued in this case indicate that the [appellees] are appointment (sic) guardians of the person of [E.M.] for an indefinite time period. This Court finds that by consenting to the indefinite guardianship in this case both [C.M.] and [E.M.] contractually relinquished their right to custody.

> Even if she did not contractually relinquish her rights to custody, [C.M.] provided no good cause for removal of the [appellees] as guardians.

{¶ 5} On June 17, 2020, appellant again filed an application to terminate guardianship. Appellant stated that prior to and during the guardianship she had been a fit parent and that she agreed to appellees' being E.M.'s guardians temporarily as they were able to provide the necessary medical care. Appellant stated that the "exigent" medical care had been provided that that she is now able to provide the medical and educational care that the ward needs. On the same day, appellant filed a request that a

3.

transcript from the August 16, 2013 hearing on the original application for appointment of guardian; she stated that the transcript would aid in establishing the temporary nature of the guardianship; the motion was denied because the court concluded that the tapes were no longer in existence.

{¶ 6} On July 20, 2020, appellees filed a motion to dismiss based on the doctrine of res judicata. Appellees argued that the court's December 22, 2015 judgment entry found that appellant consented to the indefinite guardianship and that the purpose of the guardianship, the ward's medical issues, had not resolved. Thus, appellant could not establish good cause for terminating the guardianship. Appellant opposed the motion arguing that in juvenile custody matters, the application of res judicata is inappropriate due to the continuing jurisdiction of the court until the juvenile reached the age of majority. Appellant further asserted that the current application involved facts arising from 2015 forward.

{¶ 7} On September 15, 2020, the magistrate denied the motion finding that the doctrine of res judicata did not "strictly comply" but limited any evidence of "good cause" for the guardians' removal to evidence from December 22, 2015 to the present.

{¶ 8} A hearing on the application was held on September 30, 2020. Testimony was presented by appellant and her husband, E.M.'s maternal grandfather, aunt, father, and E.M.'s parental grandmother (appellee) and uncle. The court also conducted an in-camera interview of E.M.

4.

{¶ 9} On December 7, 2020, the magistrate denied the application. The court first noted that the ward's health had not significantly changed. The court stated that appellant, by consenting to the guardianship, "contractually relinquish[ed]" her right to custody, and, regardless, appellant failed to demonstrate good cause to remove the guardians. The court explained:

> [T]he purpose for which the guardianship [sic] has not changed. [C.M.] did provide evidence that she is financially able to provide for the ward. Also, evidence was presented that [C.M.] can provide health insurance for the ward. However, the focus is not on [C.M's] financial ability to care for the ward. The focus is "good cause" to remove the guardians. [C.M.'s] financial ability to care for the ward does not equate to good cause for the removal of the current guardians.

{¶ 10} Appellant filed objections to the magistrate's decision challenging the finding that appellant gave up her right to custody of E.M. or that an indefinite guardianship was properly characterized as permanent. Appellant further challenged the magistrate's refusal to admit testimonial and documentary evidence relating to the origin and purpose of the guardianship. Appellant also challenged the magistrate's findings that the ward's health had not significantly changed. Finally, appellant disputed the court's interpretation as to what constituted good cause to terminate a guardianship.

5.

{¶ 11} On June 23, 2021, the court denied the objections finding, upon independent review of the record, no clear error warranting reversal of the magistrate's decision. This appeal followed.

## II. Assignments of Error

Assignment of Error No. 1: The Sandusky County Probate Court erred by denying this application to terminate guardianship.

Assignment of Error No. 2: The Sandusky County Probate Court erred by refusing to admit relevant and probative proffered evidence.

Assignment of Error No. 3: The Sandusky County Probate Court erred by failing to conduct an independent review as required by Civ.R. 53.

## III. Discussion

### A. Jurisdiction of the Probate Court

{¶ 12} During the pendency of the case, an issue was raised by this court, sua sponte, regarding the jurisdiction of the Sandusky County Probate Court to establish a guardianship over E.M. who was subject to a prior custody determination in Seneca County, Ohio. Specifically, appellant was granted legal custody of E.M. during the divorce proceedings. The parties provided supplemental briefing on the issue. Appellant further requested to supplement the record with judgments pertaining to the divorce proceedings.

{¶ 13} It is clear that probate courts have exclusive jurisdiction to establish and administer guardianships. R.C. 2101.24(A)(1)(e). The court's proper or improper

6.

exercise of such jurisdiction, conferred as a matter of law, is distinct from the court's subject-matter jurisdiction; the Ohio Supreme Court has explained such distinction as follows:

> The term "jurisdiction" is also used when referring to a court's exercise of its jurisdiction over a particular case. *See State v. Parker*, 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, ¶ 20 (Cook, J., dissenting); *State v. Swiger* (1998), 125 Ohio App.3d 456, 462, 708 N.E.2d 1033. "'The third category of jurisdiction [i.e., jurisdiction over the particular case] encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable.'" *Parker* at ¶ 22 (Cook, J., dissenting), quoting *Swiger*, 125 Ohio App.3d at 462, 708 N.E.2d 1033.

*Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12.

{¶ 14} This court has previously analyzed the authority of and interplay between the Ohio probate, domestic relations, and juvenile courts to determine custody issues observing:

> With three distinct courts having the potential authority to determine the custody of a minor also comes the potential for conflict if more than one court attempts to exercise jurisdiction over the custody and care of the same

7.

minor. Faced with conflicts between a probate court and a domestic or juvenile court's exercise of jurisdiction on this issue, Ohio courts have held that the first court to properly exercise jurisdiction over the custody of a minor retains exclusive jurisdiction. See, e.g., *Addams v. State* (1922), 104 Ohio St. 475, 135 N.E. 667; *In re Pushcar*, 110 Ohio St.3d 332, 853 N.E.2d 647, 2006-Ohio-4572, citing *In re Asente* (2000), 90 Ohio St.3d 91, 734 N.E.2d 1224; *In the Matter of the Guardianship of Pierce*, 4th Dist. No 03CA2712, 2003-Ohio-3997.

Addressing a dispute concerning jurisdiction between a court of common pleas and a probate court, the Ohio Supreme Court in *Addams* held that where a decree of divorce containing an order regarding the custody, care and control of minor children of the divorce remains in force, a probate court cannot legally interfere with the custody either by habeas corpus or letters of guardianship. *Addams* at 479, 135 N.E. 667.

*In re Guardianship of N.P.*, 6th Dist. Fulton No. F-10-030, 2011-Ohio-3846, ¶ 13-14. *See In re Guardianship of Dick*, 12th Dist. Warren No. CA98-154, 1999 WL 1037509, *2 (Nov. 15, 1999), citing *Loetz v. Loetz*, 63 Ohio St.2d 1, 3-4, 406 N.E.2d 1093, *Hoffman v. Hoffman*, 15 Ohio St. 427 (1864).

{¶ 15} Based on the cases above, we conclude the Sandusky County Probate Court did not have jurisdiction to issue letters of guardianship to appellees. However, our analysis does not end here. As a general matter, a judgment made by a court in its

erroneous exercise of jurisdiction over a particular case cannot be collaterally attacked as it is voidable, not void. *Pratts* at ¶ 32; *see In re Guardianship of Dick* at *3. In *Dick*, a case analogous to the facts presented herein, the parents of the minor wards were divorced in 1993 and a shared parenting agreement was ordered. In 1994, the paternal grandparents filed an application to be appointed guardians in probate court. *Id.* at *1. The application for a non-limited, indefinite guardianship stated that the guardianship was necessary because the children had been in their custody for nearly one year. *Id.*

{¶ 16} In 1997, appellant-mother filed an application to terminate the guardianship. Prior the hearing, the parties stipulated that the probate court had jurisdiction over the matter. *Id.* The application was ultimately dismissed and mother appealed. *Id.*

{¶ 17} On appeal, mother raised the issue of jurisdiction arguing that the domestic relations court had continuing jurisdiction of custody matters pertaining to the minor children; thus, the probate court did not have jurisdiction to award letters of guardianship. *Id.* The court rejected the argument noting that during the probate proceedings, appellant failed to file any of the divorce documents with the probate court and submitted an affidavit that she had no knowledge of any custody proceedings concerning the children in any other jurisdiction. *Id.* at *2. The court then found that because appellant had failed to contest jurisdiction and the three-year duration of the guardianship at issue, she waived the jurisdiction argument. *Id.* at *3.

9.

{¶ 18} Reviewing the arguments of the parties and the relevant case law, we must conclude that the trial court did not have jurisdiction over the initial guardianship proceedings. However, the judgment at issue was voidable, as opposed to void, and because appellant failed to contest the court's jurisdiction, she in fact consented to the guardianship, we must conclude that she waived the argument and submitted to the jurisdiction of the court.

{¶ 19} As to appellant's motion to supplement the record, during the hearing below appellant proffered the same exhibits not to contest jurisdiction but to demonstrate that C.M.'s attorney during the divorce proceedings was the same attorney representing appellees in the guardianship application process. Appellant argued that this evidenced the consensual nature of the guardianship and further bolstered the fact that the guardianship was meant to be temporary. Upon review and at this stage in the proceedings, we deny appellant's motion. Upon remand the admission of the Seneca County divorce documents can be revisited.

{¶ 20} We now turn to the merits of appellant's appeal.

### B. Admission of Evidence

{¶ 21} Appellant's second assignment of error will be addressed first as it is dispositive. Appellant argues that during the September 30, 2020 hearing on appellant's application to terminate the guardianship, the court erred by refusing to allow her to present certain evidence relevant to whether there was good cause to terminate the guardianship. Specifically, the court excluded evidence surrounding the origin and

10.

nature of the guardianship. According to appellant, this error was exacerbated by the fact that no recording or transcript of the 2013 hearing exists. Appellees counter that the presentation of such evidence was barred by res judicata as the issue of whether the guardianship was temporary or permanent was decided during the 2014 proceeding relative to appellant's first application to terminate.

{¶ 22} As set forth above, when the court denied appellees' motion to dismiss the application it found that res judicata did not "strictly" apply to bar the action. The court did, however, limit the evidence of "good cause" to "evidence from December 22, 2015 to the present" concluding that any prior evidence was barred.

{¶ 23} Thereafter, at multiple points during the September 30, 2020 hearing, appellant attempted to introduce evidence relating to the nature and purpose of the guardianship as understood by the parties at its 2013 inception. The court consistently sustained objections to the testimony. The purpose of the proffered testimony was to juxtapose the origins of the guardianship with its current status. For example, appellant proffered:

> [C.M.] would testify, that she already has, that she was told that it was temporary. That she was told and directed by the [appellees]. And that she was assured of certain things relative to the guardianship and its duration, its indefinite duration as well as the fact that it was set up for certain very specific purposes, which, again, are reflected in the documents themselves in the Court file in order to provide certain educational and

medical advantages to [E.M.] that her parents at the time were not able to provide her with. And that would be her testimony that cannot – we cannot illicit due to the objection.

{¶ 24} The magistrate's December 22, 2015, decision denying appellant's first motion to terminate the guardianship found that "the ward's health has not significantly changed making a guardianship no longer necessary." The court stated that appellant consented to the indefinite guardianship and, as such, she "contractually relinquished [her] right to custody." The court then stated that even if appellant had not relinquished custody, she failed to demonstrate "good cause" to terminate appellees as guardians.

{¶ 25} Whether the purpose of the guardianship at its inception in 2013 was the ward's health concerns or the provision of monetary aid for such concerns including insurance for medical care and therapies is relevant to the current proceedings. Such information was clearly important to aid the court determining whether the purpose of the guardianship had been fulfilled and no longer necessary.

{¶ 26} In limiting appellant's presentation of evidence at the hearing, the court's conclusion that any evidence as to the purpose of the guardianship was barred by the court's 2015 decision is erroneous. It is well-settled that absent a permanent relinquishment of custody, a parent has a paramount right to the custody of their child. *See In re Guardianship of Smith*, 12th Dist. Preble No. CA2002-12-012, 2003-Ohio-4247, ¶ 9. Thus, in cases involving the guardianship of a minor child, in determining whether good cause exists to terminate the guardianship, the focus cannot be limited to

12.

the unfitness of the guardian; rather, the court, in determining what is in the best interest of the child, must also examine the fitness of the natural parent who is still entitled to preferential treatment. *In re Guardianship of Godsey*, 2d Dist. Clark No. 2002-CA-69, 2003-Ohio-2692, ¶ 11-12.

{¶ 27} Upon review of the record in the proceedings below, we find that the trial court failed to give preferential treatment to appellant as E.M.'s natural parent. This is evidenced in its refusal to allow evidence surrounding the inception of the guardianship. Under the present facts we stress that the trial court needs to determine whether good cause exists to terminate the guardianship by examining *all* the relevant evidence.

{¶ 28} Because we find that the court improperly limited evidence during the hearing, we must reverse the judgment and remand the matter for a new hearing. Appellant's second assignment of error is well-taken. Based on this finding, we find that appellant's first and third assignments of error are moot and not well-taken.

### III.  Conclusion

{¶ 29} The June 23, 2021 judgment of the Sandusky County Probate Court is reversed and the matter is remanded for a new hearing in accordance with this decision. Pursuant to App.R. 24, appellees are ordered to pay the costs of this appeal.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                           _____

                                                                    JUDGE

Gene A. Zmuda, J.


Stephen W. Powell, J.                        _____
CONCUR.

                                                                    JUDGE


                                                                    _____
                                                                    JUDGE


Judge Stephen W. Powell, Twelfth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.