**[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 312.]**

JUSTIS, APPELLANT, *v.* JUSTIS ET AL., APPELLEES.

[Cite as *Justis v. Justis*, 1998-Ohio-626.]

*Custody—Interstate child custody dispute—Uniform Child Custody Jurisdiction Act, R.C. 3109.21 et seq., and the Parental Kidnapping Prevention Act, Section 1738A, Title 28, U.S. Code, construed.*

Under the Uniform Child Custody Jurisdiction Act, R.C. 3109.21 *et seq.,* and the Parental Kidnapping Prevention Act, Section 1738A, Title 28, U.S.Code, a state court that has rendered an initial custody decree has exclusive jurisdiction over the ongoing custody dispute if that state has continuing jurisdiction. Where that state complies with the jurisdictional requirements under state law and under the Parental Kidnapping Prevention Act, its orders are entitled to full faith and credit enforcement by any other state. (R.C. 3109.21 *et seq.* and Section 1738A, Title 28, U.S.Code, construed.)

(No. 97-17—Submitted January 21, 1998—Decided April 1, 1998.)

APPEAL from the Court of Appeals for Meigs County, No. 96CA11.

_____

{¶ 1} Rhonda Kaye Justis, plaintiff-appellant, and Charles Rex Justis, defendant-appellee, were married on April 17, 1987, and divorced on July 5, 1990. At the time of the divorce, the parties had one daughter and were expecting their second daughter. The court awarded custody of the children to appellant and granted appellee reasonable visitation rights. Appellee Darlene Newell, the paternal grandmother, sought visitation rights. Newell was subsequently added as a third-party defendant and was awarded visitation rights.

{¶ 2} Appellant moved to terminate her ex-husband's visitation rights, claiming that he was sexually abusing the older child. The court initially believed her claims and terminated Mr. Justis's visitation rights in August 1992. Soon after,

the court curtailed the visitation rights of appellee Newell and prohibited her from allowing appellee Justis to have any contact with the children. However, after the parties submitted to polygraph tests, the court became concerned that appellant had fabricated the claims and had even sexually abused the child herself, just to make it appear that the child's father had committed the abuse. The court ordered that Mr. Justis be permitted supervised visitation. The court also ordered the parties and the children to continue counseling, which they had been receiving per court order. Throughout this period, appellant repeatedly interfered with the visitation rights of both Newell and Mr. Justis.

{¶ 3} On April 5, 1994, appellant filed a motion seeking court permission to move with the children to North Carolina, to pursue a job opportunity. The court held a hearing on April 19, 1994 and granted appellant's motion. The order was journalized on May 17, 1994. Appellant moved to North Carolina with the children on April 20, 1994.

{¶ 4} In its May 17, 1994 order, the court also modified custody. To ensure that the children would continue their relationship with their father, the trial court named appellant residential parent for the school year and appellee Justis residential parent for the summer months. Mr. Justis was also awarded visitation during the school year. The court noted that it was in the best interest of the children to continue visitation with Newell. Because of appellant's previous attempts to cut off her ex-husband's contact with the girls, the court warned appellant that if she failed to return the children to their father for the summer, she could be charged with kidnapping.

{¶ 5} On June 13, 1994, appellant filed a motion for stay of execution and asked the court to readjust the summer visitation schedule to give her parents, who reside in Ohio, visitation rights. The court denied these motions on June 14, 1994. That same day, appellant filed a complaint in Forsyth County, North Carolina, asking North Carolina to assume jurisdiction for the purpose of modifying the May

17, 1994 custody decree rendered in Ohio. This time, appellant claimed that both daughters had been abused and mistreated by their father and that she should be given exclusive custody of the children.

{¶ 6} The North Carolina court issued an *ex parte* protective order, restraining appellees from removing the children from North Carolina or from appellant's custody. Subsequently, while motions were still pending in Ohio, on October 20, 1994, the North Carolina court determined that it had jurisdiction over the matter and granted appellant exclusive permanent custody of the children. Although appellee and Newell were notified of the North Carolina proceedings, they did not appear in or contest the North Carolina case or appeal the judgment.

{¶ 7} Meanwhile, in Ohio, the proceedings were ongoing. On September 20, 1994, appellees filed a contempt motion against appellant for her failure to abide by the terms of the May 17, 1994 order. In response, appellant filed a motion to dismiss for lack of subject matter jurisdiction. On October 25, 1994, appellant filed the North Carolina decree with the Ohio trial court. Following a hearing on appellant's motion to dismiss, the court found that it had jurisdiction over the pending dispute, and that Ohio, not North Carolina, was the proper forum to resolve issues relating to the custody of the children. The trial court subsequently held appellant in contempt for her failure to abide by the terms of the May 17, 1994 custody order.

{¶ 8} On appeal, appellant challenged the jurisdiction of the Ohio court to find her in contempt. She also argued that the Ohio court should have recognized the North Carolina decree, which modified the May 17, 1994 custody determination. The court of appeals affirmed. It found that the Ohio court had jurisdiction over the contempt motion, that the North Carolina court lacked jurisdiction to modify the Ohio custody decree, and that Ohio was not required to accord the North Carolina order full faith and credit.

**{¶ 9}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Eslocker, Hodson & Oremus Co., L.P.A.,* and *T. E. Eslocker*, for appellant.

_____

**FRANCIS E. SWEENEY, SR., J.**

**{¶ 10}** In this case, we must decide which state court, Ohio or North Carolina, had jurisdiction to rule on the custody dispute between the parties.

**{¶ 11}** Generally, "[t]he court in which a decree of divorce is originally rendered retains continuing jurisdiction over matters relating to the custody, care, and support of the minor children of the parties." *Loetz v. Loetz* (1980), 63 Ohio St.2d 1, 2, 17 O.O.3d 1, 406 N.E.2d 1094. However, a jurisdictional dispute may arise when one parent moves out of state with the children. The question then becomes which state has the authority to exercise jurisdiction over the matter.

**{¶ 12}** To help resolve interstate custody disputes, the Uniform Child Custody Jurisdiction Act ("UCCJA") was drafted in 1968 and adopted by Ohio in 1977. See R.C. 3109.21 to 3109.37, 137 Ohio Laws, Part I, 359. North Carolina also adopted the UCCJA. See N.C.Gen.Stat. 50A-1 *et seq*. The Act was intended to "avoid jurisdictional conflict and to promote cooperation between state courts in custody matters so that a decree is rendered in the state that can best decide the best interest of the child." *State ex rel. Aycock v. Mowrey* (1989), 45 Ohio St.3d 347, 349, 544 N.E.2d 657, 660. By promulgating uniform rules regarding jurisdiction over such matters, the Act sought to decrease the epidemic of parental kidnapping and to "prevent the desperate shifting from state to state thousands of innocent children" caught amidst interstate custody battles. *Fry v. Ball* (1975), 190 Colo. 128, 131, 544 P.2d 402, 405. To bolster the effectiveness of the UCCJA, Congress passed the Parental Kidnapping Prevention Act ("PKPA"), Section 1738A, Title 28, U.S.Code, in 1980, mandating that states afford full faith and credit to valid

child custody orders of another state court. *Thompson v. Thompson* (1988), 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512; Demelis, Interstate Child Custody and the Parental Kidnapping Prevention Act: The Continuing Search for a National Standard (1994), 45 Hastings L.J. 1329, 1329-1330.

**{¶ 13}** In deciding the question of which state court should exercise jurisdiction in this interstate custody dispute, it is necessary to review the pertinent sections of R.C. 3109.21 *et seq.* and of the PKPA, Section 1738A, Title 28, U.S.Code. Under R.C. 3109.22(A), a trial court in Ohio that has jurisdiction to make a parenting determination[1] shall exercise that jurisdiction only if one of the conditions specified in subsections (1) through (4) is met. In this case, subsections (A)(1) and (2) are applicable.[2] R.C. 3109.22 (A)(1) and (2) provide:

"(A) No court of this state that has jurisdiction to make a parenting determination relative to a child shall exercise that jurisdiction unless one of the following applies:

"(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state

---

1. R.C. 3109.21(B) defines "parenting determination" as "a court decision and court orders and instructions that, in relation to the parents of a child, allocates parental rights and responsibilities for the care of the child, including any designation of visitation rights, and designates a residential parent and legal custodian of the child or that, in relation to any other person, provides for the custody of a child, including visitation rights. It does not include a decision relating to child support or any other monetary obligation of any person."

2. R.C. 3109.22(A)(3) and(4) also provide that no court of this state shall exercise jurisdiction unless:
"(3) The child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;
"(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with division (A)(1), (2), or (3) of this section, or a court in another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to make a parenting determination relative to the child, and it is in the best interest of the child that this court assume jurisdiction."
These subsections are inapplicable to this case.

because of his removal or retention by a parent who claims a right to be the residential parent and legal custodian of a child or by any other person claiming his custody or is absent from this state for other reasons, and a parent or person acting as parent continues to live in this state;

"(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]"

{¶ 14} Similar language is found in the PKPA. See Sections 1738A(c)(2)(A) and (B), Title 28, U.S.Code.

{¶ 15} In this case, Ohio was the home state of the two children when the custody proceeding was commenced in 1990. Thus, under subsection (A)(1), Ohio is the "home state." Therefore, the trial court satisfied the jurisdictional conditions set forth in R.C. 3109.22(A)(1).

{¶ 16} Additionally, the Ohio court could exercise jurisdiction under R.C. 3109.22(A)(2). This section confers the authority to exercise jurisdiction on an Ohio court if it is in the best interest of the children, if the children and at least one contestant have a significant connection with this state, and if there is substantial evidence available in Ohio concerning the children's present or future care, protection, training, and personal relationships.

{¶ 17} Again, these requirements have been met. The children have a significant connection to Ohio since several relatives, including their father and their maternal and paternal grandparents, continue to reside here. There is also substantial evidence in Ohio concerning their present and future care, protection, and personal relationships. This evidence includes psychological and counseling reports. The counselors in the relevant Ohio agencies have had a long-standing relationship with the girls and are familiar with their complicated family histories.

Furthermore, under R.C. 3109.22(A)(2), two contestants (appellees) have a significant connection with this state because they reside here. R.C. 3109.21(A) defines "contestant" as "a parent of a child who claims a right to be the residential parent and legal custodian of the child or claims visitation rights with respect to the child, or a person, other than a parent of a child, who claims a right to custody or visitation rights with respect to the child." Both appellees fall within the statutory definition of "contestant." Thus, Ohio can assert jurisdiction under R.C. 3109.22(A)(2).

{¶ 18} The North Carolina court asserted jurisdiction under similar sections of its own version of the UCCJA, specifically, N.C.Gen.Stat. 50A-3. The court found that North Carolina was the "home state" of the minor children (since the children and their mother reside there), that the children have a "significant connection" to North Carolina, and that there was "substantial evidence" there relating to the children's present and future care, protection, training, and personal relationships. The North Carolina court further found that no other state, including Ohio, had jurisdiction over this matter.

{¶ 19} One of the problems inherent in the UCCJA is that some of its provisions, such as the "substantial evidence" and "significant connection" factors cited above (and found in R.C. 3109.22[A][2]), can be interpreted to allow two states to exercise concurrent jurisdiction. See *Atkins v. Atkins* (1992), 308 Ark. 1, 6, 823 S.W.2d 816, 819. This is evident in this case where both Ohio and North Carolina claim jurisdiction under their own versions of the UCCJA. The PKPA, however, provides for exclusive jurisdiction, and eliminates the possibility of concurrent jurisdiction by preventing a second state from modifying a custody decree where the original home state has continuing jurisdiction. *Crump v. Crump* (Utah App.1991), 821 P.2d 1172, 1174-1175. The PKPA " 'attempts to more clearly limit the circumstances under which a court may modify the custody decree of another state.' " *McDow v. McDow* (Alaska 1996), 908 P.2d 1049, 1053, quoting

*Greenlaw v. Smith* (1994), 123 Wash.2d 593, 603, 869 P.2d 1024, 1031. Therefore, the terms of the PKPA prevail over the UCCJA. *Atkins, supra*, at 6, 823 S.W.2d at 819.

{¶ 20} In accordance with these principles, we find that the North Carolina court erred in asserting jurisdiction in this case and in failing to recognize that, pursuant to the PKPA, Ohio had continuing jurisdiction. Section 1738A(f), Title 28, U.S.Code narrowly defines when a state court can modify a decree issued by the original state court. In order for one state to modify an existing parenting decree, or child custody decree (as it is referred to in the PKPA), from another state, (1) the state seeking to modify the decree must have jurisdiction to make a child custody determination, and (2) the original state must no longer have jurisdiction, or must have declined to exercise such jurisdiction. Both prongs of this test must exist.

{¶ 21} North Carolina can satisfy the first prong of the test by asserting that it is the home state of the children, since they resided in North Carolina at the time the court modified the Ohio decree.[3] Section 1738A(c)(2)(A), Title 28, U.S.Code. However, North Carolina cannot satisfy the second prong of the test because Ohio had continuing jurisdiction. Section 1738A(d), Title 28, U.S.Code provides that the jurisdiction of a state continues as long as the state meets the jurisdictional requirements under its own laws (here, R.C. 3109.21 *et seq.*) and the state remains the residence of the children or at least one contestant. In this case, the trial court had jurisdiction under Ohio laws (R.C. 3109.22[A][1] and [A][2]), and Ohio remains the residence of two contestants. Therefore, Ohio had continuing jurisdiction in this case. Under these circumstances, North Carolina should not

---

3. Ohio can also be considered the "home state" under R.C. 3109.22(A)(2). This illustrates that under the UCCJA, the two courts may have had concurrent jurisdiction.

have asserted jurisdiction in this case, and it acted improperly in modifying the parenting determination made by the Ohio court.

{¶ 22} In sum, we hold as follows: Under the UCCJA, R.C. 3109.21 *et seq.,* and PKPA, Section 1738A, Title 28, U.S.Code, a state court that has rendered an initial custody decree has exclusive jurisdiction over the ongoing custody dispute if that state has continuing jurisdiction. Where that state complies with the jurisdictional requirements under state law and under the PKPA, its orders are entitled to full faith and credit by any other state.

{¶ 23} We recognize that appellant failed to advise the North Carolina court that a proceeding was pending in Ohio. Nevertheless, as the court of appeals stated, we will not reward appellant for her deception by deferring to the jurisdiction of the North Carolina court where it is clearly inappropriate to do so.

{¶ 24} The evidence in this case demonstrates that appellant was willing to go to any length to deprive appellees of contact with the two children. Not only was there evidence that she fabricated claims of sexual abuse, but the trial court found that she actually abused the children herself in order to cast suspicion on appellees and to cut off their rights to visitation. Just as the trial court began to sort things out and the girls were able to reestablish a loving relationship with their father and paternal grandmother, appellant asked the court for permission to move to North Carolina. We wonder whether the true motive for her relocation was not a job opportunity but the chance to put distance between the girls and their father and to end his parental rights by relitigating issues that the Ohio court had already decided. One of the main goals of the PKPA was to deter parents from crossing state lines to "forum shop" in order to relitigate custody disputes to reach more favorable results. *Tufares v. Wright* (1982), 98 N.M. 8, 11, 644 P.2d 522, 525. This is precisely what appellant has attempted to do here. We are unwilling to condone such behavior.

**{¶ 25}** When Ohio adopted the UCCJA, it did so for the express purpose of avoiding "jurisdictional competition and conflict with the courts of other states and assur[ing] that the state with the optimum access to the relevant facts makes the custody determination, thus protecting the best interests of the child." *In re Guardianship of Wonderly* (1981), 67 Ohio St.2d 178, 180, 21 O.O.3d 111, 113, 423 N.E.2d 420, 422. Our holding today comports with that purpose. Since the Ohio court had continuing jurisdiction over the custody dispute, it had the authority to issue a contempt order against appellant for her failure to abide by the terms of its prior parenting determination, which modified custody. Furthermore, the Ohio court properly refused to afford full faith and credit to the decree of the North Carolina court, since North Carolina lacked jurisdiction to modify the May 17, 1994 parenting determination. Instead, the parenting determinations made by the trial court were entitled to full faith and credit recognition by the North Carolina court.

**{¶ 26}** Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____