HOWE, f.k.a. Schulte, Appellee,

v.

SCHULTE, Appellant.

[Cite as *Howe v. Schulte* (2001), 141 Ohio App.3d 760.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–00–007.

Decided March 16, 2001.

See also 71 Ohio St.3d 41, 641 N.E.2d 719.

*Virginia M. Wall,* for appellee.

*Gregg D. Hickman,* for appellant.

---

PIETRYKOWSKI, Presiding Judge.

This is an appeal from a judgment of the Wood County Court of Common Pleas, Domestic Relations Division, which granted the motion of plaintiff-appellee, Sonia Howe, f.k.a. Sonia Schulte ("Howe"), to transfer this case to the home state of the minor children of Howe and her ex-husband, defendant-appellant John Schulte ("Schulte"). From that judgment, Schulte raises the following assignment of error:

"The trial court erred as a matter of law, abused its discretion and ruled against the manifest weight of the evidence when it dismissed the case *sub judice* and transferred jurisdiction to the state of North Carolina, Macklenberg [*sic*] County District Court."

This appeal presents the most recent chapter in the ongoing saga of *Schulte v. Schulte.* The underlying facts and history of this case can be found in our decisions of *Schulte v. Schulte* (June 11, 1993), Wood App. No. 91–WD–075, unreported, 1993 WL 197413, and *Schulte v. Schulte* (Nov. 20, 1998), Wood App. No. WD–97–097, unreported, 1998 WL 800955, and in the Supreme Court of Ohio's decision in *Schulte v. Schulte* (1994), 71 Ohio St.3d 41, 641 N.E.2d 719. Those facts will not be repeated here except as necessary for an understanding of the issue before us.

Howe filed a complaint for divorce on July 21, 1989. The parties were granted a divorce on June 10, 1991. Through that decree Howe was awarded custody of the parties' two minor daughters, Leslie, born October 26, 1984, and Elizabeth ("Libby"), born July 5, 1986, and Schulte was awarded supervised visitation for eight weeks and unsupervised visitation according to the Wood County Domestic Relations Court schedule thereafter. From that date on, the subject of Schulte's rights to visitation and companionship with the parties' children has been the predominant issue in this litigation.

On June 26, 1992, Howe filed a notice of intent to relocate pursuant to R.C. 3109.051(G), although she did not specify where or when she intended to relocate. On March 4, 1996, Howe filed in the court below a motion for an order transferring the case to the home state of the minor children pursuant to R.C. 3109.21 through 3109.27. Howe did not, however, specify in that motion the state

she believed to be the children's "home state." Rather, she simply stated that she and the children have not lived in Ohio "for years." Subsequently, Schulte filed numerous motions regarding visitation and support. On July 6, 1999, Howe filed a request for leave to submit a supplemental brief *instanter* in support of her motion to transfer to home state, which leave was granted. In her brief, Howe asserted that Ohio was no longer a convenient forum for the present case in that she and the children have lived in North Carolina since 1996. She further stated that she has retained counsel in Mecklenburg County, North Carolina, and that this counsel had filed an action in that jurisdiction so as to give the orders of the lower court regarding Schulte's visitation full faith and credit in the state of North Carolina. In support of her motion to transfer, Howe asserted that all of the children's current home life, relationships, activities, schooling, doctors, therapists, and other contacts are in North Carolina and that the only litigant remaining in Ohio is Schulte, the noncustodial parent. In response, Schulte filed a motion to dismiss Howe's motion to transfer and a motion for visitation and companionship, which sought to enforce his visitation privileges. Specifically, Schulte argued that he had never been notified of any action pending in Mecklenburg County, North Carolina, and, as such, pursuant to *Justis v. Justis* (1998), 81 Ohio St.3d 312, 691 N.E.2d 264, Ohio remained the state with exclusive jurisdiction over all pending matters in this case. In her response to Schulte's motion to dismiss, Howe asserted that there was no action pending in Mecklenburg County and that she had simply registered the Ohio visitation decree with the North Carolina court, attaching a copy of the Mecklenburg County filing to her response.

On December 13, 1999, the case proceeded to a hearing on the motion to transfer, at which Howe was the sole witness. Howe testified that she and the girls have lived in North Carolina since July 1996, that the girls have been in school in that community since that time, and that the girls do not have regular contact with the Toledo, Ohio community. She further testified that she has a North Carolina driver's license, that she owns no Ohio property, that she does own property in North Carolina, and that she files North Carolina state tax returns. With regard to her children, Howe testified that the girls' school, teachers, friends, doctors, and counselor were all in North Carolina and that the girls are involved in various extracurricular activities in that community.

On December 23, 1999, the trial court filed a judgment entry in which it found that the state of Ohio was an inconvenient forum and that the state of North Carolina was the home state of the minor children of the parties. The court therefore determined that North Carolina was the more appropriate forum for any further proceedings in this matter, transferred jurisdiction over the case to the state of North Carolina, Mecklenburg County District Court, and dismissed

the case from the Wood County Court of Common Pleas, Domestic Relations Division. Accordingly, the court did not rule on Schulte's motion for visitation and companionship. Schulte now appeals that judgment.

In his sole assignment of error, Schulte asserts that the trial court erroneously determined that Ohio was an inconvenient forum for further proceedings in this matter.

It is well established that it is within the sound discretion of a domestic relations court to assume jurisdiction in a case involving an interstate custody or visitation dispute. *Durgans v. Durgans* (Feb. 9, 2001), Portage App. No. 2000–P–0026, unreported, 2001 WL 114983. Accordingly, a reviewing court will not reverse a lower court's decision regarding its own jurisdiction absent an abuse of discretion. *Id.* An "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

In general, "the court in which a decree of divorce is originally rendered retains continuing jurisdiction over matters relating to the custody, care, and support of the minor children of the parties." *Loetz v. Loetz* (1980), 63 Ohio St.2d 1, 2, 17 O.O.3d 1, 1–2, 406 N.E.2d 1093, 1094. Nevertheless, "a jurisdictional dispute may arise when one parent moves out of state with the children." *Justis, supra,* at 314, 691 N.E.2d at 267. When that occurs, "[t]he question then becomes which state has the authority to exercise jurisdiction over the matter." *Id.* To address that issue, Ohio has adopted the Uniform Child Custody Jurisdiction Act at R.C. 3109.21 through R.C. 3109.37. Accordingly, in exercising its discretion in an interstate-custody or visitation dispute, the domestic relations court is guided and limited by the statutory factors found in these statutes. *In re Smith* (Dec. 4, 1998), Ashtabula App. No. 98–A–0033, unreported, 1998 WL 964689.

"Under R.C. 3109.22(A), a trial court in Ohio that has jurisdiction to make a parenting determination shall exercise that jurisdiction only if one of the conditions specified in subsections (1) through (4) is met." *Justis, supra,* at 315, 691 N.E.2d at 268. R.C. 3109.22(A) reads:

"(A) No court of this state that has jurisdiction to make a parenting determination relative to a child shall exercise that jurisdiction unless one of the following applies:

"(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a parent who claims a right to be the

residential parent and legal custodian of a child or by any other person claiming his custody or is absent from this state for other reasons, and a parent or person acting as parent continues to live in this state[.]"

The phrase "home state" is defined by R.C. 3109.21(E) as "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six consecutive months[.]" Accordingly, for purposes of determining the lower court's jurisdiction, when Howe initiated the divorce and child custody proceeding in 1990, Ohio was the home state of the Schulte children. As such, the lower court did have jurisdiction to review the continuing matters in this case.

■ Nevertheless, once a domestic relations court determines that it has jurisdiction pursuant to R.C. 3109.22(A), it may decline to exercise that jurisdiction if it finds that " 'it is an inconvenient forum to make a parenting determination under the circumstances of the case and that a court of another state is a more appropriate forum.' " *In re Smith, supra,* quoting R.C. 3109.25(A). In making this determination, R.C. 3109.25(C) provides:

"In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account, but is not limited to, any of the following factors:

"(1) If another state is or recently was the child's home state;

"(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

"(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

"(4) If the parties have agreed on another forum that is no less appropriate."

■ In the present case, the trial court held a hearing at which Howe testified. As stated above, Howe testified that she and the girls have lived in North Carolina since 1996 and that the girls' school, friends, doctors, counselors, and activities are in North Carolina. In contrast, Schulte submitted no evidence to indicate that the girls had any close connections with anyone in Ohio. Given this testimony, it is clear that substantial evidence concerning the girls' present or future care, protection, training, and personal relationships is more readily available in North Carolina. As such, we cannot say that the trial court abused its discretion in finding that North Carolina is now the girls' home state and that Ohio is no longer a convenient forum for litigating future matters in this case.

Appellant contends that pursuant to *Justis,* the trial court was required to maintain jurisdiction over this case. We disagree. In *Justis,* the court ad-

dressed the issue of when a court in one state could modify an existing parenting decree or child custody decree issued by a court of another state. The court held at the syllabus:

"Under the Uniform Child Custody Jurisdiction Act, R.C. 3109.21 *et seq.*, and the Parental Kidnapping Prevention Act, Section 1738A, Title 28, U.S.Code, a state court that has rendered an initial custody decree has exclusive jurisdiction over the ongoing custody dispute if that court has continuing jurisdiction. Where that state complies with the jurisdictional requirements under state law and under the Parental Kidnapping Prevention Act, its orders are entitled to full faith and credit enforcement by any other state."

In reaching this holding, the court applied a two-part test, found in the Parental Kidnapping Prevention Act, for determining whether a court in one jurisdiction can modify a decree issued by a court in another jurisdiction. The court concluded that for such a modification to occur, "(1) the state seeking to modify the decree must have jurisdiction to make a child custody determination, and (2) the original state must no longer have jurisdiction, or must have declined to exercise such jurisdiction." *Id.* at 317, 691 N.E.2d at 269. Accordingly, *Justis* did not address the issue raised in the present case, *i.e.*, whether Ohio is an inconvenient forum for dealing with present and future child custody and visitation issues in this matter. Moreover, in *Justis*, the court that issued the original decree had not declined to exercise jurisdiction, as is the situation in the present case.

We therefore conclude that the trial court did not err in finding Ohio to be an inconvenient forum in this matter, and the sole assignment of error is not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining; the judgment of the Wood County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.

*Judgment affirmed.*

SHERCK and GLASSER, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.