OPINION
The instant action in habeas corpus is presently before this court for consideration of respondents' dual motions for summary judgment. Upon reviewing the parties' respective evidentiary materials and arguments, we hold that Judge Mary Cacioppo, respondent, had jurisdiction to issue a judgment in which she awarded custody of four minor children to Lawrence Montecalvo ("Montecalvo"), respondent. Thus, judgment will be entered against petitioner, Valerie Nalbach, as to her claim in habeas corpus.
A review of the parties' evidentiary materials reveals the following undisputed facts. Petitioner and Montecalvo were married for six years and had four children, all of whom are still minors. In 1994, Montecalvo was granted a divorce in the Trumbull County Court of Common Pleas on the grounds of incompatibility. As part of the separation agreement incorporated into the divorce decree, petitioner was designated as the residential parent of the four children and Montecalvo was granted certain visitation rights. Montecalvo was also required to pay both spousal and child support.
In October 1998, petitioner filed with the trial court a notice of intent to move to the state of Florida with the children and her new husband. Before the planned move could be completed, Montecalvo submitted a motion for the acceptance of a shared parenting plan. In response, petitioner moved the trial court to modify Montecalvo's companionship rights with the children. These two motions were assigned to Judge Cacioppo, a retired visiting judge, for consideration.
After conducting an oral hearing on the motions, Judge Cacioppo issued a judgment in which the motion to modify Montecalvo's companionship rights was overruled and his proposed shared parenting plan was approved. Although this judgment did not contain any reference to petitioner's notice of intent to move, it did have an express order which prohibited petitioner and Montecalvo from moving the children outside Trumbull County without the trial court's approval.
Approximately fifteen days after issuing the foregoing judgment, Judge Cacioppo held a new hearing on the question of whether Montecalvo's child support obligation should be modified. As part of the judgment entry stemming from this hearing, Judge Cacioppo again ordered petitioner and Montecalvo not to remove the four children from the county without court approval.
At some point following the issuance of the two foregoing judgments, Montecalvo moved Judge Cacioppo to reallocate the parental rights in regard to his four children. A third hearing was then scheduled for late May 1999. During that proceeding, petitioner's trial counsel at that juncture, Attorney Bruce M. Broyles, informed Judge Cacioppo that she had taken the children to Florida for part of their summer vacation. Attorney Broyles also gave Judge Cacioppo an address at which petitioner could supposedly be reached in Florida.
In light of the information provided by counsel, Judge Cacioppo immediately rendered a new judgment in which she found that petitioner had violated the prior court order as to the removal of the children from Trumbull County. As a result, she ordered that a warrant for petitioner's arrest be issued.
In July 1999, Attorney Broyles moved to withdraw as counsel for petitioner. In this motion, Attorney Broyles asserted that petitioner had ignored his legal advice when she had taken the children to Florida. He further asserted that when he had recently tried to contact petitioner at the Florida address she had given him, the correspondence had been returned with the indication that the "addressee" was unknown. Based on the foregoing assertions, Judge Cacioppo granted the motion to withdraw.
Three months later, Judge Cacioppo scheduled a new hearing regarding Montecalvo's motion to reallocate the parental rights. The clerk of the trial court was given instructions to note the scheduling of the hearing on the court docket and to send notice of the hearing to petitioner at her last known address. The clerk followed these instructions, mailing the hearing notice to petitioner's last address in Trumbull County. The notice was returned to the trial court with the notation that petitioner had moved without leaving a forwarding address.
On November 19, 1999, Judge Cacioppo rendered a judgment in which she granted the motion to reallocate and named Montecalvo as the new residential parent for the four children. In regard to petitioner, Judge Cacioppo noted that although the court had tried to give her notice of the hearing, she had failed to appear at the proceeding. In addition, the judgment ordered Montecalvo to take any legal steps necessary to regain custody of the children and return them to Trumbull County.
Although the evidentiary materials before this court do not indicate how, Montecalvo was ultimately able to obtain physical custody of the four children. In October 2000, a new attorney filed with the trial court a notice of appearance on behalf of petitioner. The new attorney then submitted a motion for relief from the November 1999 judgment. This motion was predicated upon the assertion that she had not received notice of the hearing because she no longer lived at her last Trumbull County address. The motion also stated that Montecalvo had been aware of her new address in Florida and had failed to give the court this new information.
While the motion for relief from judgment was pending before Judge Cacioppo in the trial court, petitioner initiated the instant action before this court. As the primary basis for her habeas corpus claim, petitioner asserted that Judge Cacioppo had lacked jurisdiction to render the November 1999 judgment because petitioner had never been served with a notice indicating that a second hearing would be held on the motion to reallocate parental rights. Specifically, petitioner asserted that Judge Cacioppo had erred in ordering that the hearing notice be mailed to her last Trumbull County address because Judge Cacioppo and Montecalvo had been aware that she was living in Florida as of November 1999. Based upon this, petitioner argued in her petition that she was entitled to have custody of the four children immediately returned to her.
In responding to the petition in habeas corpus, Judge Cacioppo and Montecalvo filed separate motions for summary judgment. Although some of the argumentation in the two motions varied to some extent, the principal contention in both motions was identical; i.e., Judge Cacioppo and Montecalvo maintained that the service of the hearing notice had not violated petitioner's due process rights because petitioner had been aware of the pendency of the motion to reallocate and had not informed the trial court of her new Florida address. In support of this contention, Judge Cacioppo and Montecalvo attached to their motions copies of various documents which had been filed in the underlying divorce proceeding. In addition, Montecalvo submitted with his motion a copy of the appearance docket in the divorce case.
Petitioner filed separate responses to both summary judgment motions. In regard to the notice issue, petitioner contended in both responses that service of the hearing notice had been improper because the notice had been sent by regular mail, not certified mail as is required under Civ.R. 4.1. Petitioner further contended that the notice was mailed to the wrong address because Judge Cacioppo had been told during the May 1999 hearing that petitioner now had a Florida address.
Like Judge Cacioppo and Montecalvo, petitioner attached to her responses copies of documents which were filed by all three parties during the divorce case. Included in these materials were copies of certain judgments issued by Judge Cacioppo and certain motions submitted on petitioner's behalf in the case. Petitioner also attached a partial excerpt of the May 1999 hearing before Judge Cacioppo and a copy of the appearance docket in the underlying case.
Our review of the evidentiary materials submitted by the three parties shows that none of the submitted documents are accompanied by any affidavit in which a person with knowledge avers that the documents are true and accurate copies of the originals. The majority of the documents contain a small stamped statement in which the clerk of court in the underlying divorce case states that the documents are true and accurate copies. A limited number of petitioner's and Montecalvo's documents do not contain any form of certification.
Civ.R. 56(C) sets forth a specific list of evidentiary materials which a trial court can consider in ruling upon a motion for summary judgment. If a specific document does not fall within one of the categories of proper materials under the rule, it can only be considered if it is accompanied by an affidavit in which the affiant attests to the document's authenticity. Helton v. Ohio Adult Parole Auth. (June 26, 2001), Franklin App. No. 00AP-1108, unreported, 2001 Ohio App. LEXIS 2938. Because Civ.R. 56(C) does not specifically provide that certified documents can be considered in a summary judgment exercise, it has been held that such documents are not proper evidentiary materials. Id. Obviously, the foregoing logic would also be applicable to uncertified documents.
However, the courts of this state have also held that the failure to incorporate a document into an affidavit will be considered waived if the opposing party does not make a timely objection. Ouellette v. Myhal (Mar. 14, 1991), Cuyahoga App. No. 58192, unreported, 1991 Ohio App. LEXIS 1057. Under such circumstances, it is within the sound discretion of the trial court to decide whether to consider the improper materials in ruling upon the motion. Ryser v. Conrad (Mar. 31, 2000), Trumbull App. No. 98-T-0088, unreported, 2000 Ohio App. LEXIS 1428.
In relation to the certified materials submitted by the parties, our review of the two motions and the two responses indicate that none of the parties have raised any objection as to whether the documents should be considered in this summary judgment exercise. Moreover, although Civ.R. 56(C) does not permit the consideration of a certified document, the fact that each document has been certified is an indication that the documents in question are reliable. Thus, we conclude that the certified materials should be considered in determining whether summary judgment is appropriate in this instance.
As to the uncertified materials, our review also shows that none of the parties have challenged the authenticity of the uncertified copies attached to Montecalvo's motion and petitioner's two responses. Furthermore, we would note that some of the uncertified materials filed by petitioner, such as the appearance docket, are identical to the copies submitted by either Judge Cacioppo or Montecalvo. In addition, some of the uncertified materials were also attached by petitioner to her habeas corpus petition; therefore, to the extent that Judge Cacioppo and Montecalvo have relied upon those specific documents in moving for summary judgment, petitioner has admitted that the copies are accurate and true. Finally, the uncertified materials do not contain any specific language or markings which would call into question whether the copies are accurate and true.
In light of the foregoing, this court concludes that all of the evidentiary materials, including the limited uncertified materials, can be considered in the instant summary judgment exercise. Given the lack of any objection to the documents in question, the documents warrant consideration because they contain sufficient indicia of reliability.
This court further holds that, when considered as a whole, the evidentiary materials establish that there are no factual disputes as to any of the relevant facts in this case. As a result, our ultimate determination on the notice issue will turn upon the resolution of the following legal question: Did Judge Cacioppo violate petitioner's due process rights when she instructed the clerk of courts to send notice of the November 1999 hearing to petitioner's last known Trumbull County address? Our review of the pertinent case law supports the conclusion that no due process violation occurred.
The Supreme Court of Ohio has recognized that it is a fundamental tenet of the right to due process that notice of a proceeding must be given in a manner reasonably calculated to give the party an opportunity to be heard in the matter. Ohio Valley Radiology Assoc., Inc. v. Ohio ValleyHosp. Assn. (1986), 28 Ohio St.3d 118, 124. However, in regard to the issue of providing notice of a hearing, the Supreme Court has also indicated that there is more than one way to satisfy the requirement of a reasonable notice; i.e., the court has refused to recognize one rule which a trial court must always follow in providing notice. Id. Thus, the determination of whether a certain form of notice violates due process must be made on a case-by-case basis. Zashin, Rich, Sutula MonastraCo., L.P.A. v. Offenberg (1993), 90 Ohio App.3d 436, 443.
In Ohio Valley Radiology, the Supreme Court stated that, unless a local rule of court requiring another form of notice, the entry of the trial date upon the trial court's docket is sufficient to satisfy the requirements of due process because a party is responsible for keeping track of the status of her case. In light of this holding, the appellate courts of this state have held that the mailing of a hearing notice is sufficient if the notice is sent to the proper person and in a timely manner. Offenberg at 444; State Farm Mut. Auto. Ins. Co. v. Peller
(1989), 63 Ohio App.3d 357, 359.
In the instant matter, the appearance docket in the underlying divorce case shows that, on October 20, 1999, an entry was made indicating that a hearing on the motion to reallocate the parental rights would be held on November 9, 1999. Given that this docket entry was made approximately twenty days prior to the scheduled date of the hearing, the timing of the entry was such that it gave petitioner an ample opportunity to learn of the hearing date and prepare for the hearing itself. Pursuant to OhioValley Radiology, this entry was sufficient to satisfy the basic requirements of due process because petitioner had an obligation to stay aware of the status of the divorce case.
Although Judge Cacioppo was not required to provide any further notice as to the hearing, the appearance docket also shows that, on October 20, 1999, she instructed the clerk for the trial court to send a notice of the hearing to petitioner by regular mail. The docket further indicates that, on the following day, the clerk complied with these instructions by mailing a notice to petitioner's last known Trumbull County address. As a result, the evidentiary materials before this court supports the conclusion that the hearing notice was mailed to the proper person and in a timely manner.
In asserting that the mailing of the hearing notice to the Trumbull County address violated her due process rights, petitioner has raised three arguments. First, petitioner contends that Judge Cacioppo and the trial court clerk were required to follow the procedure under Civ.R. 4.1 in serving her with the notice. As to this point, this court would note that Civ.R. 4.1 only governs the service of the original complaint in an action. Hence, the service of the hearing notice was instead governed by Civ.R. 5. See American Bonus Group, Inc. v. Vukich (Feb. 9, 1999), Summit App. No. 19089, unreported, 1999 Ohio App. LEXIS 391. Under Civ.R. 5(B), a trial court's judgment entries can be served upon the parties through the regular mail to a party's last known address. That rule also expressly provides that service by mail is deemed completed once the clerk has mailed the document. See, also, Warren-Niles Republic Credit Union v.Semer (Dec. 4, 1987), Trumbull App. No. 3782, unreported, 1987 Ohio App. LEXIS 9906.
In her second argument, petitioner maintains that Judge Cacioppo should have instructed the clerk to mail the notice to a Florida address because Judge Cacioppo had been informed of that new address during the May 1999 hearing. In regard to this issue, we would indicate that petitioner does not dispute the fact that petitioner's attorney at that particular hearing, Attorney Bruce M. Broyles, also informed Judge Cacioppo that petitioner would only be in Florida until July 1999. Furthermore, when Attorney Broyles subsequently moved to withdraw as counsel in July 1999, he asserted in his motion that he had been unable to contact petitioner at the Florida address she had given to him. Under these circumstances, we conclude that Judge Cacioppo acted properly in concluding that there was a greater possibility for petitioner to receive the notice if it was mailed to her last known Trumbull County address.
Lastly, petitioner argues that her due process rights were violated because, as of October 1999, Montecalvo was aware of her "second" Florida address and could have given this information to Judge Cacioppo. However, it has been expressly held that a pro se litigant has the responsibility to keep the trial court informed as to any changes in her address. Marshall v. Staudt (Feb. 1, 1999), Stark App. No. 1998CA00177, unreported, 1999 Ohio App. LEXIS 762. Given that informing the trial court of a new address is relatively simple, it follows that the burden of satisfying this requirement cannot be shifted to the opposing party or the trial court. Moreover, given the nature of the orders contained in the two judgments Judge Cacioppo had issued in February 1999, petitioner had to be aware that the motion to reallocate parental rights was still pending before the court; thus, she had the responsibility to keep track of the status of her case.
In light of the foregoing discussion, this court holds that the undisputed evidentiary materials demonstrate that Judge Cacioppo took reasonable steps to give petitioner notice of the November 1999 hearing. Therefore, because petitioner's due process rights were not violated, Judge Cacioppo had jurisdiction to proceed with the November 1999 hearing and issue the resulting judgment transferring custody of the four children to Montecalvo.
In addition to the "notice" issue, petitioner has raised four other issues as possible grounds supporting the granting of a writ of habeas corpus. Under the first issue, she contends that Judge Cacioppo abused her discretion in waiting seven months to "rule" upon her notice of intent to move to Florida.
Regarding this issue, this court would first note that a delay in seven months would not generally deprive a judge of jurisdiction to proceed in a case. More importantly, the undisputed evidentiary materials before us establish that Judge Cacioppo did not delay seven months in considering the notice of intent. Specifically, the materials show that, approximately three months after petitioner had filed the notice, Judge Cacioppo issued two judgment entries in which she expressly ordered both parties to the divorce action not to remove the four children from Trumbull County. Although neither of the two judgments contained a specific reference to the notice of intent to move, the fact that Judge Cacioppo had prohibited the removal of the children implicitly indicated that Judge Cacioppo was not going to allow petitioner to take the children to Florida in the immediate future.
Under her second remaining issue, petitioner asserts that Judge Cacioppo abused her discretion in determining, as part of the November 1999 judgment, that Montecalvo was entitled to custody of the children. In relation to this point, it should be noted that any flaw in Judge Cacioppo's legal analysis would not deprive her of jurisdiction over the custody issue. Instead, any such flaw would constitute a procedural error which could be challenged in a direct appeal from the November 1999 judgment. In addition, we would indicate that the fact that petitioner may not have received proper notice of the November 1999 judgment does not change our analysis on this point, since any delay in receiving notice of the judgment was due to petitioner's failure to inform the trial court of her change in address.
Under her third separate issue, petitioner maintains that she is entitled to a writ of habeas corpus because Judge Cacioppo violated her due process rights during a contempt hearing in January 2001. However, the evidentiary materials before this court undisputedly demonstrate that Judge Cacioppo's custody judgment was rendered approximately fifteen months before the contempt hearing was held. As a result, any error which may have occurred during the January 2001 proceeding could not have had any effect upon Judge Cacioppo's prior jurisdiction to rule upon the motion to reallocate and name Montecalvo as the residential parent for the children.
Petitioner's final separate issue does raise a proper jurisdictional question. Under this issue, petitioner maintains that, prior to the issuance of Judge Cacioppo's November 1999 judgment, she had initiated a new custody proceeding in Collier County, Florida. Based upon this, petitioner asserts that the November 1999 judgment should be declared void because the pendency of the Florida custody case deprived Judge Cacioppo of the ability to proceed to judgment on the motion to reallocate.
As petitioner correctly notes in conjunction with the foregoing argument, Ohio has adopted the Uniform Child Custody Jurisdictional Law Act ("UCCJA"), R.C. 3109.21 et seq. This statutory scheme sets forth specific rules governing when an Ohio trial court can exercise jurisdiction over a child custody proceeding. In construing the UCCJA, the Supreme Court of Ohio has recognized that the statutory scheme allows for instances in which an Ohio court and a foreign state court can have concurrent jurisdiction over a child. As a result, the Supreme Court has stated that, for purposes of determining whether an Ohio court has exclusive jurisdiction over a child, the UCCJA must be applied in conjunction with the Parental Kidnapping Prevention Act ("PKPA"), Section 1738A, Title 28, U.S.Code. Justis v. Justis (1998), 81 Ohio St.3d 312.
The factual scenario in Justis is similar to the instant scenario, in that the mother in Justis filed a new custody action in North Carolina after the initial custody decision was issued in Ohio. After reviewing the various provisions of both statutory schemes, the Justis court held that the filing of the North Carolina proceeding had not deprived the Ohio trial court of jurisdiction over the child because "* * * a state court that has rendered an initial custody decree has exclusive jurisdiction over the ongoing custody dispute if that state has continuing jurisdiction." Id., syllabus. Stated differently, the Ohio court retained jurisdiction regardless of the status of the North Carolina case when: (1) the Ohio court had jurisdiction under the UCCJA when it issued the initial custody decree; and (2) the Ohio court had continuing jurisdiction under the PKPA.
Applying this two-step test for jurisdiction to the facts of this case, we would begin our analysis by noting that, pursuant to R.C.3109.22(A)(1), an Ohio trial court has jurisdiction to make a custody determination in relation to a child if Ohio was the "home state" of the child when the proceeding started. In turn, R.C. 3109.21(E) provides that a child's "home state" is the state in which the child lived with his parents for six consecutive months immediately before the custody dispute arose.
In the instant action, the evidentiary materials readily show that the four children in question had lived with their parents in Ohio for more than six months prior to the initiation of the divorce proceeding in 1993. Therefore, the first prong of the Justis test for jurisdiction has been satisfied because Ohio was the "home state" of the children when the original custody determination was rendered in the underlying case.
As to the second prong of the test, the Justis court noted that the PKPA provides that a state has continuing jurisdiction over a custody dispute "* * * as long as the state meets the jurisdictional requirements under its own laws (here, R.C. 3109.21 et seq.) and the state remains the resident of the children or at least one contestant." Id. at 317. In this case, Ohio's jurisdictional requirements had been met because, as was just noted, Ohio was the home state of the four children when the trial court made the first custody decision. Moreover, the evidentiary materials before us show that one of the contestants in the instant custody dispute, i.e., Montecalvo, is still a resident of Ohio.
Accordingly, since both prongs of the Justis test had been satisfied at the time Judge Cacioppo rendered her November 1999 judgment, this court holds that she had exclusive jurisdiction under the UCCJA and the PKPA. The fact that petitioner had initiated a new custody proceeding in Florida had no effect upon Judge Cacioppo's ability to name Montecalvo as the new residential parent for the children.
To be entitled to a writ of habeas corpus in a child custody case, the petitioner must be able to prove, inter alia, that the present restraint of the child is unlawful. In re Pollis (Sept. 5, 1997), Trumbull App. No. 97-T-0139, unreported, 1997 Ohio App. LEXIS 4029. Hence, the respondent in a habeas corpus action will prevail on a motion for summary judgment if he can establish the following in relation to the "restraint" element: (1) there are no genuine issues remaining to be litigated as to a material fact; (2) he is entitled to judgment as a matter of law; and (3) the nature of the evidentiary materials are such that a reasonable person could only find against the petitioner, even if the evidentiary materials are construed in a manner most favorable to the petitioner. SeeWelco Industries v. Applied Cos. (1993), 67 Ohio St.3d 344, 346.
In light of the foregoing analysis, this court concludes that Judge Cacioppo and Montecalvo have satisfied the summary judgment standard as to the "restraint" element of petitioner's habeas corpus claim. That is, they have demonstrated that Montecalvo's custody of the four children is lawful because Judge Cacioppo had jurisdiction to render her November 1999 judgment granting the motion to reallocate parental rights. Thus, because petitioner will not be able to satisfy all elements of a habeas corpus claim, Judge Cacioppo and Montecalvo are entitled to judgment in their favor.
The dual summary judgment motions of Judge Mary Cacioppo and Lawrence Montecalvo, respondents, are granted. It is the order of this court that final judgment is rendered in their favor as to petitioner's habeas corpus petition.
O'NEILL, P.J., concurs, GRENDELL, J., concurs with Concurring Opinion.