[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Garrett v. Costine,* Slip Opinion No. 2018-Ohio-1613.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-1613

THE STATE EX REL. GARRETT *v.* COSTINE, JUDGE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Garrett v. Costine,* Slip Opinion No. 2018-Ohio-1613.]

*Prohibition—Writ sought to require Ohio probate-court judge to vacate adoption decree—Parental Kidnapping Prevention Act, 28 U.S.C. 1738A—West Virginia court had exclusive continuing jurisdiction over proceedings involving minor child when adoption petition was filed in Ohio—Ohio court lacked jurisdiction to issue adoption decree—Writ granted.*

(No. 2017-0801—Submitted November 21, 2017—Decided April 26, 2018.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} This original action involves an interstate adoption dispute between the grandmother and aunt of a minor child. Relator, Tamalie Garrett, seeks a writ of prohibition against respondent, Belmont County Probate Judge J. Mark Costine,

to require him to vacate an order granting the adoption petition filed by Tamalie's daughter, Elizabeth Garrett. Because Judge Costine patently and unambiguously lacked jurisdiction over the adoption petition, we grant the writ and order Judge Costine to vacate the adoption decree entered in Belmont County Probate Court case No. 16 AD 23.

### Background

{¶ 2} Tamalie's granddaughter, G.G., was born on June 29, 2011, in West Virginia to Amanda Garrett.

*The West Virginia litigation*

{¶ 3} In December 2011, the Family Court of Hancock County, West Virginia, entered an agreed order of guardianship. The order designated Elizabeth Garrett, Amanda's sister, as G.G.'s legal guardian, *see* W.Va.Code Ann. 44-10-1 et seq., and awarded Tamalie visitation with G.G. on a weekly basis and annually on Christmas Day and the day after Christmas.

{¶ 4} In the summer of 2012, Elizabeth and G.G. moved to Ohio. There is no indication that Tamalie ever sought to register the visitation order in Ohio. Four years later, on July 26, 2016, Tamalie filed a petition in the West Virginia family court to modify the 2011 visitation order. The next month she filed a petition to hold Elizabeth in contempt for violating the 2011 visitation order. Elizabeth and Tamalie entered mediation and, on October 21, 2016, they advised the West Virginia court that they had reached an agreement with regard to the parenting and visitation issues involved in the case.

{¶ 5} In April 2017, based on the developments detailed below, the West Virginia court dismissed Tamalie's petition for contempt without prejudice.

*The Ohio litigation*

{¶ 6} Unbeknownst to Tamalie, on October 19, 2016, while the petitions to modify visitation and for contempt were pending in West Virginia, Elizabeth filed a petition to adopt G.G. in Belmont County Probate Court. The parties stipulate

that at some point before the filing of the adoption petition, Amanda, the biological mother, "executed a permanent surrender agreement regarding" G.G. and that the Belmont County Probate Court never notified Tamalie or the West Virginia court that the adoption petition had been filed.

{¶ 7} On December 15, 2016, Judge Costine issued a final decree of adoption in case No. 16 AD 23, granting Elizabeth's adoption petition. The Ohio court sent a copy of the adoption decree to the West Virginia court, which then mailed it to Tamalie along with a notice indicating that unless she was successful in getting the adoption decree set aside or modified in some way, the West Virginia court would dismiss her petition for contempt. Tamalie filed motions in case No. 16 AD 23 for relief from judgment and to intervene. Judge Costine scheduled a hearing on Tamalie's motions, but before the hearing date, he entered an order staying the case pending resolution of this original action.

{¶ 8} On June 13, 2017, Tamalie filed a complaint for writs of prohibition and mandamus in this court. On July 12, 2017, we granted Judge Costine's motion to dismiss the mandamus claim but granted an alternative writ of prohibition. 149 Ohio St.3d 1470, 2017-Ohio-5799, 77 N.E.3d 993. Tamalie submitted evidence, including a set of stipulations, and the case has been fully briefed.

## Legal Analysis

{¶ 9} A writ of prohibition is an extraordinary remedy that is granted in limited circumstances "with great caution and restraint." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). Tamalie is entitled to the writ only upon a showing that (1) Judge Costine is about to exercise or has exercised judicial power, (2) his exercise of that power is unauthorized by law, and (3) denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of the law. *State ex rel. Elder v. Camplese*, 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13. Tamalie need not establish the lack of an adequate remedy at law if Judge Costine's lack of jurisdiction was "patent and

unambiguous." *State ex rel. Vanni v. McMonagle*, 137 Ohio St.3d 568, 2013-Ohio-5187, 2 N.E.3d 243, ¶ 6.

{¶ 10} The Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. 1738A, "mandate[s] that states afford full faith and credit to valid child custody orders of another state." *Justis v. Justis*, 81 Ohio St.3d 312, 315, 691 N.E.2d 264 (1998). As such, the PKPA "addresses questions of jurisdiction in cases involving interstate custody and visitation disputes." *In re R.M.*, 7th Dist. Mahoning No. 07 MA 232, 2009-Ohio-3252, ¶ 46; *see State ex rel. Morenz v. Kerr*, 104 Ohio St.3d 148, 2004-Ohio-6208, 818 N.E.2d 1162, ¶ 16. "[T]he PKPA prevents a second state from modifying an initial state's order except in carefully circumscribed situations." *Meade v. Meade*, 812 F.2d 1473, 1476 (4th Cir.1987).

{¶ 11} In Ohio, probate courts are vested with "original and exclusive jurisdiction over adoption proceedings." *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, ¶ 9. However, we have held that "an Ohio court patently and unambiguously lacks jurisdiction to proceed in a child-custody case commenced when a child-custody case is already pending in a court of another state and that court is exercising jurisdiction consistently with the [PKPA] and the state's version of the Uniform Child Custody Jurisdiction Act ('UCCJA')." *Morenz* at ¶ 1; *see generally State ex rel. Seaton v. Holmes*, 100 Ohio St.3d 265, 2003-Ohio-5897, 798 N.E.2d 375. Most jurisdictions, including Ohio and West Virginia, have replaced their versions of the former UCCJA with versions of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *See Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 20-22.

{¶ 12} The PKPA requires "every State [to] enforce according to its terms * * * any custody determination or visitation determination made consistently with the provisions of this section by a court of another State." 28 U.S.C. 1738A(a). As used in the PKPA, " 'visitation determination' means a judgment, decree, or other order of a court providing for the visitation of a child, and includes permanent and

4

temporary orders and initial orders and modifications." 28 U.S.C. 1738A(b)(9). Therefore, the PKPA applies to the initial order granting visitation to Tamalie.

{¶ 13} In addition, the West Virginia order establishing guardianship and granting Tamalie visitation was "made consistently" with the PKPA for purposes of 28 U.S.C. 1738A(a). A court's visitation determination is "consistent" with the PKPA if (1) the court had jurisdiction under its own state laws to make the determination and (2) the state "is the home State of the child on the date of the commencement of the proceeding * * * and a contestant continues to live in" the state. 28 U.S.C. 1738A(c)(1) and (2)(A). The state law applicable to the West Virginia guardianship and visitation proceeding is the UCCJEA, W.Va.Code Ann. 48-20-101 et seq. The UCCJEA applies to all child-custody proceedings, which, as defined by the act, include proceedings "in which legal custody, physical custody, or visitation with respect to a child is an issue." W.Va.Code Ann. 48-20-102(d). In 2011, when the West Virginia guardianship and visitation proceeding commenced, both G.G. and Tamalie lived in West Virginia, and G.G. had lived there since birth. *See* 28 U.S.C. 1738A(b)(4) (defining "home State" as "the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons").

{¶ 14} Under 28 U.S.C. 1738A(d), the PKPA sets forth a federal standard for exclusive continuing jurisdiction over a prior custody or visitation order. Under that provision, West Virginia's jurisdiction would be exclusive and continuing at the time Elizabeth invoked the jurisdiction of the Ohio probate court, as long as (1) West Virginia still had jurisdiction as a matter of state law and (2) West Virginia "remain[ed] the residence of the child or *of any contestant*." (Emphasis added.) As used in the PKPA, " 'contestant' means a person, including a parent or grandparent, who claims a right to custody or visitation of a child." 28 U.S.C. 1738A(b)(2).

**{¶ 15}** The second requirement for continuing jurisdiction under the PKPA is easily met, because Tamalie (a contestant) still resides in West Virginia. To satisfy the first requirement of 28 U.S.C. 1738A(d), West Virginia must still have jurisdiction over that state's proceedings regarding G.G. as a matter of state law, the UCCJEA. Under West Virginia's version of the UCCJEA, it retains exclusive and continuing jurisdiction until a West Virginia court "or a court of another state *determines* that the child, the child's parents and any person acting as a parent do not presently reside in this state." (Emphasis added.) W.Va.Code Ann. 48-20-202(a). Unlike the broader definition in the PKPA, continuing jurisdiction under this statute takes into account only the residency of the child, the parents, and a person acting as a parent.

**{¶ 16}** The dispositive consideration is thus whether either court made a determination that the relevant persons no longer resided in West Virginia. Clearly, the West Virginia court made no such determination, as it was actively exercising continuing jurisdiction over the proceedings regarding G.G. when it was informed of the adoption decree. Further, the record in this case contains no evidence to show that Judge Costine determined that G.G., her biological mother, Amanda (there is no evidence identifying a putative father), and Elizabeth did not "presently reside" in West Virginia for purposes of W.Va.Code Ann. 48-20-202(a). Indeed, the record contains evidence showing that Amanda actually lived in West Virginia when Elizabeth invoked the jurisdiction of the Ohio court. Therefore, there is no evidence that Judge Costine made the requisite findings to undermine West Virginia's exclusive continuing jurisdiction.

**{¶ 17}** Under the PKPA, an Ohio court could not modify the West Virginia visitation order unless the West Virginia court "no longer ha[d] jurisdiction to modify such [visitation] determination or [had] declined to exercise jurisdiction to modify such determination." 28 U.S.C. 1738A(h). Tamalie has established that West Virginia still had jurisdiction over the initial visitation determination and had

6

the requisite continuing jurisdiction to modify that order. A "modification" within the meaning of the PKPA is "a custody or visitation determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody or visitation determination concerning the same child, whether made by the same court or not." 28 U.S.C. 1738A(b)(5). Therefore, Judge Costine's granting of Elizabeth's petition for adoption was a "modification" of the West Virginia order in violation of 28 U.S.C. 1738A(h).

{¶ 18} At the time Elizabeth commenced the Ohio adoption proceeding, Tamalie's petition to modify the visitation order was already pending in West Virginia. In fact, Elizabeth was actively involved in the West Virginia case when she filed for adoption in Ohio without informing the West Virginia court or Tamalie of the filing. In enacting the PKPA, "Congress explicitly specified [that] one of the chief purposes of the PKPA is to 'avoid jurisdictional competition and conflict between State courts.' " *Thompson v. Thompson*, 484 U.S. 174, 177, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), quoting Pub.L. No. 96-611, 94 Stat. 3569, section 7(c)(5), note following 28 U.S.C. 1738A (Dec. 28, 1980). This goal is further suggested in 28 U.S.C. 1738A(e), which requires that "[b]efore a child custody or visitation determination is made, reasonable notice and opportunity to be heard *shall* be given to the contestants * * *." (Emphasis added.) But here no attempt was made to comply with this provision of the PKPA, further defeating the goals implicit in the act.

{¶ 19} Tamalie has satisfied her burden of demonstrating that Judge Costine patently and unambiguously lacked jurisdiction over the adoption proceedings. West Virginia had exclusive continuing jurisdiction under its version of the UCCJEA and therefore was consistently exercising jurisdiction over Tamalie's petitions to modify visitation and for contempt when Judge Costine improperly exercised jurisdiction over the adoption petition. Judge Costine thus failed to give

full faith and credit to a valid visitation determination of another state in violation of the provisions of the PKPA.

### Conclusion

{¶ 20} Judge Costine patently and unambiguously lacked jurisdiction to grant Elizabeth's petition to adopt G.G. We therefore grant Tamalie's request for a writ of prohibition and order Judge Costine to vacate the adoption decree and cease exercising jurisdiction over those proceedings.

Writ granted.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

DEGENARO, J., not participating.

_____

Erik L. Smith, for relator.

Daniel P. Fry, Belmont County Prosecuting Attorney, and David K. Liberati, Assistant Prosecuting Attorney, for respondent.

_____